**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Adkins v. Cole*, Slip Opinion No. 2025-Ohio-1026.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-1026

THE STATE EX REL. ADKINS *v.* COLE ET AL. (FOUR CASES.)

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Adkins v. Cole*, Slip Opinion No. 2025-Ohio-1026.]

*Mandamus—Public-records requests—Inmate failed to show by clear and convincing evidence that prison failed to provide kites he had sent to prison library, that prison possesses or has control over kites he sent to third-party vendor that supplies and services electronic tablets provided to inmates, or that before providing copy to him prison removed any fields from kite he had requested—Inmate failed to show existence of inmate sign-in sheet he had requested, admits that he has received property-room form and grievance he requested, and failed to provide evidence refuting prison's assertion that prison video footage he requested no longer exists—Writs denied, relator's requests for statutory damages denied in case Nos. 2024-0740, 2024-0747, and 2024-0846, and $1,000 in statutory damages awarded in case No. 2024-0856.*

(Nos. 2024-0740, 2024-0747, 2024-0846, and 2024-0856—Submitted January 7, 2025—Decided March 27, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by FISCHER, DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ. KENNEDY, C.J., concurred in part and dissented in part, with an opinion joined by BRUNNER, J.

**Per Curiam.**

{¶ 1} Relator, Patrick H. Adkins III, filed four separate original actions against respondents, Department of Rehabilitation and Correction ("DRC") employees Steven Cole and Ellen Myers. In all four actions—case Nos. 2024-0740, 2024-0747, 2024-0846, and 2024-0856—Adkins seeks a writ of mandamus ordering respondents to produce public records he requested from them and an award of statutory damages. We resolve all four cases in this opinion.

{¶ 2} We deny the writ requested in each case. And we deny Adkins's requests for statutory damages in case Nos. 2024-0740, 2024-0747, and 2024-0846 but award Adkins $1,000 in statutory damages in case No. 2024-0856.

## I. GENERAL BACKGROUND

{¶ 3} These four cases involve public-records requests Adkins sent to Cole or Myers, both DRC employees, between August 2023 and March 2024.

{¶ 4} During most of the time relevant here, Adkins was confined at the Lebanon Correctional Institution ("LeCI"). In July 2024, he transferred to another prison. During the time he was confined at LeCI, Adkins sent numerous public-records requests to DRC employees.

{¶ 5} Myers serves as a warden's assistant and as LeCI's public-information officer; her duties include responding to inmates' public-records requests. Since April 2024, Cole has served as LeCI's inspector of institutional

services, and he previously served as a DRC unit manager and case manager; he assisted Myers with responding to Adkins's public-records requests. And Devin Hoover is a DRC employee who was serving as LeCI's inspector of institutional services until February 2024; his duties included responding to electronic kites sent by inmates.[1]

## II. LEGAL STANDARDS

**{¶ 6}** "[U]pon request by any person, a public office or person responsible for public records shall make copies of [a] requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). A writ of mandamus is an appropriate remedy to compel compliance with the Public Records Act. *See* R.C. 149.43(C)(1)(b). To obtain the writ, "the requester must prove by clear and convincing evidence a clear legal right to the record and a corresponding clear legal duty on the part of the respondent to provide it." *State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-1419, ¶ 10.

**{¶ 7}** Statutory damages must be awarded if a requester transmitted a written request by hand delivery, electronic submission, or certified mail and the public office failed to comply with its obligations under R.C. 149.43(B). R.C. 149.43(C)(2). Adkins submitted most of his public-records requests at issue here by electronic kite, which constitutes electronic submission for the purposes of R.C. 149.43(C)(2). *See Sehlmeyer* at ¶ 21. Statutory damages are set at $100 a day for each business day the public office fails to comply with its obligations, starting with the day the requester filed the mandamus action, with a maximum award of $1,000. R.C. 149.43(C)(2).

**{¶ 8}** In addition, in each case, Adkins timely filed a motion for leave to file rebuttal evidence and attached the evidence he seeks to file. S.Ct.Prac.R. 12.06(B) states that a "[r]elator may file a motion for leave to file rebuttal evidence within

---

1. "A kite is a type of written correspondence between an inmate and prison staff." *State ex rel. Griffin v. Szoke*, 2023-Ohio-3096, ¶ 3.

the time permitted for the filing of [the] relator's reply brief" and that the "[r]elator's rebuttal evidence shall be attached to the motion for leave." "'Rebutting evidence is [evidence] given to explain, refute, or disprove new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence.'" (Bracketed text in original.) *State ex rel. Mobley v. Powers*, 2024-Ohio-104, ¶ 11, quoting *State v. McNeill*, 1998-Ohio-23, ¶ 44. In three of the cases (Nos. 2024-0740, 2024-0747, and 2024-0856), Adkins did not file evidence in accordance with the case schedule we established when granting the alternative writ. But the language of S.Ct.Prac.R. 12.06(B) does not require that a relator have filed evidence when initially permitted by the court before the relator may seek leave to file rebuttal evidence. *See Mobley* at ¶ 8, 20 (granting in part a relator's motion for leave to file rebuttal evidence even though the relator had not filed evidence in accordance with the court's schedule).[2]

### III. CASE NO. 2024-0740

*A. Facts*

**{¶ 9}** On November 24, 2023, Adkins sent the LeCI inspector's office an electronic kite requesting "a copy of all [his] electronic kites that [he had] sent to the LeCI institual [sic] library." He stated in his complaint that as of the date of filing, he had not received copies of the requested kites. Respondents aver that Hoover provided the kites to Adkins on December 4. They submitted as evidence a receipt dated December 4, although the receipt does not explicitly identify which public-records request it was for.

---

2. In two of his four merit briefs, Adkins also requests an award of attorney fees. Because he did not ask for attorney fees in his complaints, however, he may not request them in his briefs. *See* S.Ct.Prac.R. 12.02(B)(3) ("All relief sought . . . shall be set forth in the complaint."). Moreover, as a pro se litigant, Adkins is ineligible for an award of attorney fees. *See State ex rel. Stuart v. Greene*, 2020-Ohio-3685, ⁋ 9.

*B. Motion for leave to file rebuttal evidence*

{¶ 10} Other than an affidavit and a kite he attached to his complaint, Adkins did not file evidence in this case. However, he has filed a motion for leave to file rebuttal evidence. As rebuttal evidence he seeks to file an affidavit and exhibits that he argues show that respondents did not produce records in response to his November 24, 2023 public-records request. Respondents oppose the motion.

{¶ 11} Adkins's proposed exhibits consist of kites he sent to the prison library before he sent his public-records request and a letter from Myers dated October 12. They do not refute or disprove respondents' evidence showing that they provided the records Adkins requested. Adkins's proposed affidavit avers that respondents did not provide the records, but he already averred to this in his complaint. We deny the motion because the evidence Adkins seeks to file does not explain, refute, or disprove respondents' evidence. *See Mobley*, 2024-Ohio-104, at ¶ 11-12.

*C. Writ of mandamus and statutory damages*

{¶ 12} Respondents argue that we should deny the mandamus relief requested in this case because Adkins has not proved that they failed to produce the records he requested on November 24, 2023. Adkins bears the burden of production to plead and prove facts showing that he requested public records and that respondents failed to produce them. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 26. He also bears the burden of persuasion to show entitlement to a writ of mandamus by clear and convincing evidence. *Id.* Here, respondents provided evidence in the form of Hoover's affidavit that they produced the requested kites to Adkins, and Adkins's only contradicting evidence is his own sworn complaint. Absent other supporting evidence, Adkins's self-serving affidavit is not sufficient to meet his burden to show by clear and convincing evidence that he is entitled to a writ. *See State ex rel. Ellis v. Maple Hts. Police Dept.*, 2019-Ohio-4137, ¶ 6; *State ex rel. Ware v. Dept. of Rehab &*

*Corr.*, 2024-Ohio-1015, ¶ 19 (lead opinion). Because Adkins has not shown by clear and convincing evidence that respondents failed to provide the kites he had sent to the prison library, we deny his request for a writ of mandamus in this case.

{¶ 13} In addition, because Adkins has not shown that respondents failed to comply with their obligations under R.C. 149.43(B) in connection with his November 24 public-records request, we also deny the statutory damages he seeks in this case.

## IV. CASE NO. 2024-0747

### A. Facts

{¶ 14} On November 26, 2023, Adkins sent the LeCI inspector's office an electronic kite requesting a "[c]opy of [his] kites to ViaPath." ViaPath is the third-party vendor that supplies and services electronic tablets provided to DRC inmates. On November 30, Hoover responded by kite, writing, "Received." Adkins does not explicitly state that he has not received the records, but he does allege that respondents have not complied with their statutory duties in response to this public-records request and he asks for a writ of mandamus ordering production of the records. As evidence, respondents submit an affidavit from Hoover averring that "[a]ny and all communications sent to ViaPath with an incarcerated person's technical concerns relating to their . . . tablet is responded to by ViaPath." He further states that DRC "does not have access to and/or receive copies of the kites or communications sent by and between incarcerated persons and ViaPath." Finally, Hoover states that on December 4, he and Myers verbally told Adkins that the prison did not possess or have control over Adkins's kites to ViaPath.

### B. Motion for leave to file rebuttal evidence

{¶ 15} Other than an affidavit and a kite he attached to his complaint, Adkins did not file evidence in this case. However, he has filed a motion for leave to file rebuttal evidence. Respondents oppose the motion. We grant the motion in part and deny it in part.

{¶ 16} As rebuttal evidence, Adkins submits an affidavit and ten proposed exhibits containing copies of electronic kites.  Most of the exhibits do not refute, disprove, or explain evidence introduced by respondents:  Exhibit Nos. 1, 2, 4, 5, and 6 are copies of kites unrelated to Adkins's request for copies of kites he sent to ViaPath, and exhibit No. 3 is a duplicate of the kite he attached to his complaint.  However, exhibit Nos. 7 through 10 do tend to disprove respondents' evidence.  Whereas Hoover's affidavit states that DRC does not have access to copies of kites sent between inmates and ViaPath, exhibit Nos. 7, 9, and 10 are copies of kites regarding technical issues that, according to Adkins, he sent to ViaPath and that DRC later provided to him.  In addition, exhibit No. 8 consists of two kites that *other* inmates with the last name Adkins apparently sent to ViaPath regarding technical issues, and Adkins avers that DRC mistakenly provided these other inmates' kites to him.  Exhibit Nos. 7 through 10 thus tend to disprove respondents' assertion that they do not have access to kites sent to ViaPath.

{¶ 17} Accordingly, we grant Adkins's motion for leave as to exhibit Nos. 7, 8, 9, and 10, but deny it as to exhibit Nos. 1 through 6.  We also allow Adkins to file his rebuttal  affidavit, but we rely on it only to the extent that it relates to exhibit Nos. 7 through 10.

### C.  Writ of mandamus and statutory damages

{¶ 18} In the kite he sent the LeCI inspector's office on November 26, 2023, Adkins requested a "[c]opy of [his] kites to ViaPath."  Respondents argue that they do not have possession or control of those kites.  "When a public office attests that it does not have responsive records, the relator in a public-records mandamus case bears the burden of proving by clear and convincing evidence that the requested records exist and are maintained by the public office."  *State ex rel. Culgan v. Jefferson Cty. Prosecutor*, 2024-Ohio-4715, ¶ 13.  A "public office does not have a clear legal duty to furnish records that are not in its possession or control."  *State ex rel. Horton v. Kilbane*, 2022-Ohio-205, ¶ 11.

{¶ 19} The parties dispute whether respondents actually possess or have control over the kites Adkins sent to ViaPath. Hoover avers that DRC "does not have access to and/or receive copies of the kites or communications sent by and between incarcerated persons and ViaPath." Adkins submits as rebuttal evidence copies of several kites related to ViaPath technical issues that he avers DRC employees provided to him. He thus argues that DRC does have access to kites sent to ViaPath.

{¶ 20} Although the kites we have admitted as rebuttal evidence may tend to support Adkins's argument, we conclude that he has not shown by clear and convincing evidence that DRC possesses or has control over kites he sent to ViaPath. The rebuttal kites do not have a "To" line, and it is possible that they were sent to a DRC employee rather than directly to ViaPath. For example, in response to one of Adkins's kites, Hoover responded: "This is being redirected as a Request (kite) to ViaPath. You can contact them directly through your ViaPath tablet." In addition, even if DRC did provide Adkins with several kites that he had sent to ViaPath, DRC's possession of certain kites would not clearly and convincingly show that DRC possesses *all* kites he sent to ViaPath. In sum, we conclude that Adkins has not clearly and convincingly shown that respondents possess or have control over the kites he identified in his November 26 public-records request, and we deny his request for a writ of mandamus ordering production of the kites he sent to ViaPath.

{¶ 21} In addition, because Adkins has not shown that respondents failed to comply with their obligations under R.C. 149.43(B) with respect to his November 26 public-records request, we also deny the statutory damages he seeks in this case. Adkins does argue in his reply brief that respondents were required to provide *in writing* the reason for denying his request and that he is entitled to statutory damages because they provided the reason only verbally. *See* R.C. 149.43(B)(3) ("If the initial request was provided in writing, the explanation also shall be

provided to the requester in writing.").  But Adkins did not make this argument in his initial brief and thus may not assert it in his reply brief.  *See State ex rel. Colvin v. Brunner*, 2008-Ohio-5041, ¶ 61.

### V.  CASE NO. 2024-0846

#### *A.  Facts*

**{¶ 22}** On August 28, 2023, Adkins sent Myers an electronic kite requesting copies of two records covering the period of August 4 through 17: a property-room form and an "inmate sign-in sheet."  The next day, Myers denied the request, writing that the records were security records exempt from disclosure under R.C. 149.433.  Adkins now seeks a writ of mandamus compelling production of the records and an award of statutory damages.

**{¶ 23}** Myers states that the property-room form Adkins requested is a log-in sheet that DRC employees sign when they visit LeCI's inmate-property room. She further states that at the time Adkins requested a copy of the form, the property room was managed by a single female staff member.  Myers avers that Adkins is in prison for two rape convictions and that he was transferred to LeCI because of "his threatening and harassing behavior towards female staff" at his previous prison.  She explains that she denied Adkins's request for the property-room form because he could use it to determine the exact dates and times the female staff member could be found in the property room.  Myers adds that when Adkins was transferred out of LeCI in July 2024, she provided him with a copy of the property-room form because his possession of the form no longer presented a safety concern.

**{¶ 24}** Regarding Adkins's request for the inmate sign-in sheet, Myers first avers that such a document does not exist.  She also avers that providing Adkins any record that tracks another inmate's movements could put the other inmate at risk of harm, violence, and extortion.  Adkins alleges that he wants a copy of the sign-in sheet because his property has been stolen.

{¶ 25} This case also concerns an electronic kite Adkins sent to the LeCI inspector's office on November 27, 2023, in which he requested an unredacted copy of a kite he sent on November 14. Respondents provided a copy of the prior kite, but Adkins states that the copy had been improperly redacted. In connection with his November 27 public-records request, Adkins seeks a writ of mandamus ordering production of an unredacted copy and an award of statutory damages. In support of this claim, he submits as evidence what he states is a copy of the kite that respondents provided to him. The kite, however, does not show any redactions.

### B. Motion for leave to file rebuttal evidence

{¶ 26} Adkins filed a motion for leave to file rebuttal evidence in this case. As evidence, he has submitted what he states are property-room sign-in records, which he claims refute Myers's averment that the property room was managed by a single female staff member. He also has submitted documents related to his own disciplinary record, which he states refute Myers's averment that he was transferred to LeCI for sexually harassing female prison staff. In addition, he has submitted an affidavit describing the proposed exhibits.

{¶ 27} Respondents oppose the motion. They first argue that Adkins's proposed exhibits do not refute their own evidence. Although these exhibits may be of limited evidentiary value, they do tend to explain, refute, or disprove respondents' evidence. *See Mobley*, 2024-Ohio-104, at ¶ 11. Respondents also argue that Adkins's rebuttal affidavit is argumentative and in substance an additional brief. They are correct that the rebuttal affidavit contains argument, but the affidavit also explains, and swears to, the exhibits. Therefore, we grant the motion and allow the exhibits and the rebuttal affidavit to be filed but we rely on the affidavit only for its factual assertions.

### C. Writ of mandamus and statutory damages

{¶ 28} In the kite Adkins sent to the inspector's office on August 28, 2023, Adkins first requested a property-room form for August 4 through 17. Respondents

initially denied the request as a security record but produced it on July 23, 2024, after Adkins filed this action and when he was being transferred to another prison. Adkins agrees that he has received the record, so his mandamus request is now moot with respect to it. *See State ex rel. Grim v. New Holland*, 2024-Ohio-4822, ¶ 5 ("Because both parties in this case agree that [the relator]'s public-records requests have been satisfied, his mandamus claim is moot.").

**{¶ 29}** However, Adkins's request for statutory damages related to the property-room form is not moot. *See id.* He claims that respondents took an unreasonable time to produce records in response to his August 28 public-records request. *See* R.C. 149.43(B)(1). If the property-room form was not exempt from disclosure, the 11 months it took respondents to provide the form would arguably be an unreasonable period of time. But respondents' initial refusal to produce the form was based on their belief that it was exempt from disclosure under R.C. 149.433. R.C. 149.433(B)(1) exempts from public-records disclosure "security records," which are defined, as relevant here, as records "that contain[] information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage," R.C. 149.433(A)(1). Respondents have the burden to show that the property-room form falls squarely within the security-record exception. *See State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 2018-Ohio-5111, ¶ 19.

**{¶ 30}** The property-room form at issue here contains DRC employee-sign-in information for a particular room at particular times. We have previously held that similar DRC documents containing employee-shift information were exempt from public-records disclosure. *See State ex rel. Slager v. Trelka*, 2024-Ohio-5125, ¶ 19; *McDougald v. Greene*, 2020-Ohio-4268, ¶ 9. Myers avers that given Adkins's history of rape convictions and disciplinary proceedings, allowing him access to records that document the location and movements of a female staff member of LeCI could allow him to threaten and harass her. Adkins presents some evidence

rebutting Myers's assertion that the property room was staffed by a single female staff member and rebutting Myers's description of Adkins's disciplinary proceedings. But we conclude that respondents have shown that the property-room form was exempt from disclosure as a security record under R.C. 149.433(B)(1) during the times Adkins was confined at LeCI. And when Adkins was transferred to another prison, respondents gave him the form. *See Rogers* at ¶ 20, quoting *Gannett GP Media, Inc. v. Dept. of Pub. Safety*, 2017-Ohio-4247, ¶ 32 (Ct. of Cl.) (an initially proper withholding of a record as a security record does "'not establish the exception in perpetuity'"). Adkins has not shown that respondents either improperly denied his August 28 request for the property-room form based on the security-record exemption or that respondents failed to produce the form within a reasonable time. He is thus not entitled to statutory damages in connection with the form.

{¶ 31} In the August 28 kite he sent to the inspector's office, Adkins also requested a copy of the "inmate sign-in sheet" for August 4 through 17. Myers avers that no such document exists. Adkins argues that inmate sign-in sheets are public records, but he does not argue or present any evidence showing that an inmate sign-in sheet for August 4 through 17 exists. A public office "has no obligation to produce public records that do not exist," *State ex rel. Scott v. Toledo Corr. Inst.*, 2024-Ohio-2694, ¶ 12. Absent contrary evidence, an averment from the person responsible for public records that the requested records do not exist is sufficient to defeat a claim for a writ of mandamus to compel production of the records. *See id.* Because Adkins has not shown that the inmate sign-in sheet he requested exists, we deny his requests that respondents be ordered to produce the sheet and pay him statutory damages for failing to produce it.

{¶ 32} Regarding Adkins's November 27 request for an unredacted copy of a kite he sent on November 14, he claims that the copy of the kite that respondents provided him was unlawfully redacted. He seeks production of an unredacted copy

of the kite and an award of statutory damages for the allegedly improper redaction. *See* R.C. 149.43(B)(1) ("A redaction shall be deemed a denial of a request to inspect or copy the redacted information, except if federal or state law authorizes or requires a public office to make the redaction."). The copy of the kite that respondents provided Adkins, however, contains no physical redactions—for example, it does not contain any blacked-out portions. Adkins appears to allege that the kite was redacted electronically in a way that is not visible on the paper copy of the kite. He avers that kites contain fields documenting names and times that DRC employees access kites and that these fields have been removed from the copy of the kite he was provided. But the copy of the kite Adkins was provided contains fields showing names and times that DRC employees responded to the kite and took other actions related to it, and he presents no evidence showing that DRC employees accessed the kite at other times. Thus, Adkins has not shown by clear and convincing evidence that respondents actually removed any fields from the copy. Therefore, we deny Adkins's requests that respondents be ordered to provide an unredacted copy of the kite he requested on November 27 and pay him statutory damages for failing to produce it.

## VI. CASE NO. 2024-0856

### *A. Facts*

{¶ 33} On January 1, 2024, Adkins sent Myers an electronic kite requesting to view video footage recorded at the "microwave location" in LeCI's "D-unit" on December 17, 2023, at approximately 12:15 p.m. He states that the footage features himself holding up his tablet when he was placed on kite restriction. Myers responded by kite on January 4, writing that she was denying the request because the footage constituted a security record exempt from disclosure under R.C. 149.433. Adkins requests a writ of mandamus ordering respondents to allow him to view the footage and an award of statutory damages for their failure to do so. As evidence, Myers has submitted an affidavit admitting that she initially denied the

request based on the security-record exemption but averring that the footage was actually discarded because it did not relate to an event "such as an emergency, assault, or other documented incident." Her affidavit does not state whether the footage was discarded before or after she denied Adkins's request.

{¶ 34} In addition, Adkins states in his complaint that on February 6 and March 28, 2024, he sent the inspector's office a public-records request for an unredacted copy of a grievance he had filed against Hoover and Myers. He did not include copies of the requests with his complaint or submit them as evidence. The parties agree that after Adkins filed this action, respondents provided him a copy of the grievance, but Adkins argues that the grievance was improperly redacted. Adkins requests a writ of mandamus ordering production of an unredacted copy of the grievance as well as an award of statutory damages for respondents' failure to produce it.

### B. Motion for leave to file rebuttal evidence

{¶ 35} Adkins has filed a motion for leave to file rebuttal evidence. We grant the motion in part and deny it in part.

{¶ 36} As proposed evidence, Adkins has submitted copies of eight electronic kites he previously sent. Seven of the kites either are duplicates of kites already in the record (exhibit Nos. 3 and 5) or do not relate to a public-records request at issue in this case (exhibit Nos. 1, 2, 4, 7, and 8). However, exhibit No. 6 is the copy of the grievance that Adkins states respondents provided to him after he filed this mandamus action. Respondents did not submit a copy of the grievance. The exhibit helps explain respondents' averments that they provided the grievance to Adkins. We therefore admit exhibit No. 6 as rebuttal evidence. Adkins also submits a rebuttal affidavit, much of which is argumentative. We admit the affidavit as rebuttal evidence but rely on it only to the extent that it explains, or swears to, exhibit No. 6. In sum, we grant Adkins's motion for leave in part and

14

admit exhibit No. 6 and the rebuttal affidavit but deny the motion as to the other proposed exhibits.

### C. Writ of mandamus and statutory damages

{¶ 37} We deny Adkins's request that respondents be ordered to allow him to view the video footage. Myers avers that the footage was not retained and no longer exists, and Adkins provides no evidence indicating otherwise. A public office "has no obligation to produce public records that do not exist," *Scott*, 2024-Ohio-2694, at ¶ 12.

{¶ 38} Adkins also seeks statutory damages for respondents' denial of his request to inspect the video footage. Although Myers initially denied the request based on the security-record exemption of R.C. 149.433, respondents no longer defend the denial based on that exemption. Rather, respondents now contend that because the footage was not retained, "no responsive footage existed for Relator to inspect." Myers's affidavit, however, neither states when the footage was discarded nor states whether it was discarded before or after she denied Adkins's request. Nor does the affidavit cite any records-retention schedule or other policy addressing how long video footage is retained at LeCI. Portions of Myers's affidavit imply, however, that the footage existed when she received Adkins's request. For example, the affidavit states: "Although the footage no longer exists, it was my good faith belief that allowing Mr. Adkins to inspect the specific video would pose a security threat to staff and other incarcerated persons." Moreover, Myers—who has served in her current position since 2004—likely has some knowledge of how long DRC video footage is retained, yet she did not mention the lack of retention when denying Adkins's request. Instead, she denied the request based on the security-record exemption, and her affidavit describes what the video would have shown, indicating that when she denied the request she was aware of the contents of the video. If the video did not exist when she received Adkins's request, she could have easily told him so in her response.

**{¶ 39}** Absent contrary evidence, a respondent's averment that records do not exist at the time of a public-records request is generally sufficient to support the denial of a request. *See Scott* at ¶ 12. Here, however, respondents do not aver that the requested video footage did not exist when Adkins requested it in January 2024. Based on the evidence submitted regarding this request, we conclude that Adkins has shown by clear and convincing evidence that the footage existed at the time of his request. Respondents do not argue here that the footage is exempt from disclosure as a security record. We thus award $1,000 in statutory damages to Adkins because of the improper denial. *See* R.C. 149.43(C)(2).

**{¶ 40}** Adkins also asks that respondents be ordered to produce an unredacted copy of a grievance that he states he requested by kite on February 6 and March 28, 2024. Respondents aver that "the specific grievance Mr. Adkins seeks was provided to him several times" prior to his filing this action, and they also aver that they provided him with a copy of the grievance on July 23 after he filed the action. Adkins submitted as rebuttal evidence a copy of the grievance that was provided to him on July 23, but he argues that it was improperly redacted. The grievance contains no physical redactions, and he does not submit clear and convincing evidence showing that the grievance was redacted. Because respondents have now provided Adkins the grievance he requested, we deny the requested mandamus relief on mootness grounds. Adkins also asks for an award of statutory damages with respect to his request for the unredacted grievance, but we deny statutory damages in connection with that request because he does not clearly articulate his grounds for requesting them.

## VII. CONCLUSION

**{¶ 41}** We deny the mandamus relief Adkins seeks. We deny his requests for statutory damages in case Nos. 2024-0740, 2024-0747, and 2024-0846, but award him $1,000 in statutory damages in case No. 2024-0856. In addition, we deny his motion for leave to file rebuttal evidence in case No. 2024-0740, grant his

16

motion for leave to file rebuttal evidence in case No. 2024-0846, and grant in part and deny in part his motions for leave to file rebuttal evidence in case Nos. 2024-0747 and 2024-0856.

Writs denied.

_____

**KENNEDY, C.J., joined by BRUNNER, J., concurring in part and dissenting in part.**

{¶ 42} In these four cases addressed in a single opinion, this court confronts a familiar question: whether employees of the Ohio Department of Rehabilitation and Correction have complied with their statutory duty to provide copies of requested public records. *See* R.C. 149.43. In case Nos. 2024-0740 and 2024-0747, I concur in the majority's denial of relator Patrick H. Adkins III's requests for writs of mandamus and statutory damages. I also concur in the majority's denial of Adkins's requests for writs of mandamus in case Nos. 2024-0846 and 2024-0856. I part ways with the majority, however, with respect to its denial of statutory damages in case No. 2024-0846 and its calculation of only $1,000 in statutory damages awarded in case No. 2024-0856.

{¶ 43} In my view, Adkins is entitled to an award of statutory damages in case No. 2024-0846 because the property-room employee sign-in sheet he requested is not a security record and no well-informed public office or person responsible for the document would have reasonably believed that it was a security record. And in case No. 2024-0856, I would award an additional $1,000 in statutory damages because the prison inspector's office did not timely produce the requested public record: an inmate grievance Adkins filed. Rather, the inspector's office took four months, an unreasonable response time given the specificity of Adkins's request, the size of the record, and this court's precedent.

**{¶ 44}** Therefore, I concur in part and dissent in part. I would award $1,000 in statutory damages in case No. 2024-0846 and an additional $1,000 in damages in case No. 2024-0856 for a total award of $3,000 to Adkins.

## Case No. 2024-0846

**{¶ 45}** In case No. 2024-0846, at issue are two public-records requests Adkins made while confined at Lebanon Correctional Institution. The majority correctly denies Adkins's claim for writs of mandamus compelling the production of the two records. The only remaining issue is whether the prison's decision to initially deny Adkins access to the property-room employee sign-in sheet was improper and whether he therefore is entitled to an award of statutory damages under R.C. 149.43(C)(2)(a). The answer to that question turns on whether a well-informed records custodian would have reasonably believed that the property-room employee sign-in sheet was a "security record" as defined in R.C. 149.433(B)(1).

**{¶ 46}** That question returns us to a familiar place: statutory interpretation. As this court has explained, "[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. "[T]he plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover." *Lynch v. Alworth-Stephens Co.*, 267 U.S. 364, 370 (1925). "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 2003-Ohio-1099, ¶ 12. "An unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus.

**{¶ 47}** The Public Records Act, R.C. 149.43, requires public offices to make copies of public records available to any person upon request within a reasonable period. R.C. 149.43(B)(1). A "public record" is a record kept by a

"public office," R.C. 149.43(A)(1), and the parties do not dispute that the inspector's office at Lebanon Correctional Institution is a public office and that the person to whom Adkins sent his request—Ellen Myers, the warden's administrative assistant—is a custodian of public records there.

{¶ 48} R.C. 149.433(B)(1) provides that a "security record" is not a public record subject to mandatory production under R.C. 149.43. Under R.C. 149.433(A)(1), "security record" is defined as "[a]ny record that contains information *directly used* for protecting or maintaining the security of a public office against attack, interference, or sabotage." (Emphasis added.)

{¶ 49} Myers asserts that the property-room employee sign-in sheet is a security record. She argues that if Adkins, a convicted rapist, knew when a female employee worked alone in the property room, he might harass her. Although seemingly plausible, that argument is unmoored from the Public Records Act's text.

{¶ 50} "[T]he statutory definition of 'security record' focuses on how the public office uses the information in the record," not whether "the record contains information that is relevant to the security of a public office." (Emphasis deleted.) *State ex rel. Slager v. Trelka*, 2024-Ohio-5125, ¶ 43 (Kennedy, C.J., concurring in part and dissenting in part). A record is not a security record under R.C. 149.433(A)(1) unless it contains information that is *actually and directly used* to protect and maintain the security of the public office from attack, interference, or sabotage.

{¶ 51} Myers does not explain how the prison directly uses the property-room employee sign-in sheet to keep the prison safe against attack, interference, or sabotage or how the record keeps prison employees safe. Nor has she explained how the sign-in sheet otherwise qualifies as a security record under another provision of R.C. 149.433(A)—for example, when used to conduct prison-vulnerability assessments, *see* R.C. 149.433(A)(2)(a). Rather, she argues that Adkins could use the sign-in sheet to figure out when the sole, female prison

employee worked in the property room. That information could be used to threaten the female employee, but there is no proof that the prison directly and actually uses the sign-in sheet for security purposes.

{¶ 52} Myers undercuts her own argument that the property-room employee sign-in sheet is a security record by stating that the female employee is always alone in the property room. If a female employee is always alone in the property room, then whether Adkins has a form stating the same information does not protect her.

{¶ 53} "The General Assembly has not crafted a Public Records Act exemption that applies whenever a records custodian has a subjective view that the information a requested record contains could be dangerous if placed in the wrong hands. If such an exemption is to be made, it is up to the General Assembly to do it—this court 'may not rewrite the plain and unambiguous language of a statute under the guise of statutory interpretation.'" *Slager*, 2024-Ohio-5125, at ¶ 45 (Kennedy, C.J., concurring in part and dissenting in part), quoting *Pelletier v. Campbell*, 2018-Ohio-2121, ¶ 20. Myers improperly denied Adkins's public-records request because she failed to meet her burden to prove that the property-room employee sign-in sheet "falls squarely within the security record exception codified in R.C. 149.433(B)," *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 2018-Ohio-5111, ¶ 19.

{¶ 54} And because the property-room employee sign-in sheet is not a security record and no well-informed public office or person responsible for it would reasonably believe that it is a security record given the text of the statutory definition and this court's precedent, I would award $1,000 in statutory damages for Myers's improper denial of Adkins's public-records request.

**Case No. 2024-0856**

{¶ 55} Case No. 2024-0856 also concerns two separate public-records requests made by Adkins while confined at Lebanon Correctional Institution. The majority correctly denies Adkins's claims for writs of mandamus compelling production of the two records. And regarding the first request, the majority correctly awards $1,000 in statutory damages for Myers's failure to produce the "microwave location" video footage requested by Adkins before the prison destroyed it.

{¶ 56} But the majority errs in denying Adkins's request for statutory damages in connection with the second public-records request. The request—for an unredacted copy of an inmate grievance Adkins filed—he allegedly sent twice by electronic kite: first on February 6, 2024, then again on March 28, 2024. Adkins does not present sufficient evidence showing that he requested the grievance on February 6. But there is sufficient evidence showing that he sent the March 28 request, and there is also evidence showing that he did not receive the requested grievance until July 23, 2024—117 days later.

{¶ 57} Inmate grievances are public records subject to disclosure under R.C. 149.43. *See State ex rel. Mobley v. Dept. of Rehab. & Corr.*, 2022-Ohio-1765, ¶ 26. R.C. 149.43(B)(1) requires a public office to "promptly" make a public record available to the person who requested it. After receiving a public-records request, the public office has "a duty to provide the copies within a reasonable period of time." *State ex rel. Consumer News Serv., Inc. v. Worthington City Bd. of Edn.*, 2002-Ohio-5311, ¶ 37. Whether the public office has timely responded to a public-records request "'depends upon all of the pertinent facts and circumstances,' including the scope of [the] request, the volume of responsive records, and whether redactions are necessary." *State ex rel. Brinkman v. Toledo City School Dist. Bd. of Edn.*, 2024-Ohio-5063, ¶ 32, quoting *State ex rel. Morgan v. Strickland*, 2009-Ohio-1901, ¶ 10.

**{¶ 58}** This court has held that a four-month delay in producing redacted records was unreasonable when the public-records request had clearly identified the records, the relator had requested only two records, and just "some" redaction had been required. *Brinkman* at ¶ 34. We have also held that an almost three-month delay was an unreasonable amount of time for a public office to take to produce a criminal-case file and an incident report. *State ex rel. Cordell v. Paden*, 2019-Ohio-1216, ¶ 13. And although we recognized in *State ex. rel. Shaughnessy v. Cleveland* that a delay of 31 business days "may appear to stretch the outer limits of reasonableness," we held that the delay was reasonable in that case because the public office had had to search for voluminous records by subject matter and police-report number, exclude records that the requester did not want, and review the records to redact exempted information during a time when the requester made several requests for what turned out to be 345 pages of responsive records. 2016-Ohio-8447, ¶ 22.

**{¶ 59}** The four-month delay in producing the grievance Adkins requested on March 28, 2024, was plainly unreasonable. He requested only a single record, the record requested was not voluminous, and the prison did not need to redact any information. Therefore, for Myers's failure to timely produce the grievance Adkins requested in case No. 2024-0856, I would award him an additional $1,000 in statutory damages.

**Conclusion**

**{¶ 60}** The majority is correct in denying Adkins's requests for statutory damages in case Nos. 2024-0740 and 2024-0747 and in denying his requests for writs of mandamus in all four cases addressed in the majority opinion. But in my view, the majority fails to apply the plain language of the Public Records Act in denying statutory damages in case No. 2024-0846 and in awarding only $1,000 in damages in case No. 2024-0856. Adkins is entitled to an award of $1,000 in statutory damages in case No. 2024-0846 and an award of $2,000 in statutory

damages in case No. 2024-0856, for a total award of $3,000.  Accordingly, I concur in the judgment in part and dissent in part.

_____

Patrick H. Adkins III, pro se.

Dave Yost, Attorney General, and Matthew Convery, B. Alexander Kennedy, and D. Chadd McKitrick, Assistant Attorneys General, for respondents.

_____