**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Robinson v. Wesson*, Slip Opinion No. 2025-Ohio-1874.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-1874

THE STATE EX REL. ROBINSON *v.* WESSON.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Robinson v. Wesson*, Slip Opinion No. 2025-Ohio-1874.]**

*Mandamus—Public Records Act—R.C. 149.43—Public-records requester not entitled to writ, because he has already been provided with copies of the requested records—Response time of approximately three months to six public-records requests was reasonable because respondent was faced with responding to over 50 public-records requests from same requester seeking over 300 documents during that time—Writ and request for statutory damages denied.*

(No. 2024-0876—Submitted January 7, 2025—Decided May 28, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ. KENNEDY, C.J., concurred in part and

dissented in part, with an opinion.

**Per Curiam.**

{¶ 1} Relator, Jackie N. Robinson, an inmate at Grafton Correctional Institution ("GCI"), filed this original action against respondent, James Wesson, the warden's administrative assistant and public-information officer at GCI, seeking (1) a writ of mandamus ordering Wesson to make the public records that Robinson requested available for inspection and copying and (2) an award of statutory damages. Robinson subsequently filed several motions. For the reasons explained below, we deny Robinson's requests for a writ mandamus and statutory damages, and we deny all his motions.

## I. FACTS AND PROCEDURAL HISTORY
### A. The Public-Records Requests and Responses

{¶ 2} In his complaint, Robinson asserts that he sent 13 electronic kites to Wesson seeking copies of public records.[1] He seeks a writ of mandamus ordering Wesson to provide him with the public records he sought in seven of those kites, which were sent between May 27 and June 2, 2024. Robinson identified each of those kites by their reference number in his complaint. According to Robinson, in all but one of those kites, he requested copies of "his electronic filings." Wesson asserts that he understood six of the seven kites to be requests for copies of other kites that Robinson previously sent to various GCI staff members. And Wesson asserts that the seventh kite, dated June 2, "does not contain a valid public records request." Notably, in the June 2 kite, Robinson did not request any new records but, rather, asked that his "unanswered requests be sent to the office that holds [the] requested records and that [he] be provided with them."

---

1. "A kite is a type of written correspondence between an inmate and prison staff." *State ex rel. Griffin v. Szoke*, 2023-Ohio-3096, ¶ 3.

2

{¶ 3} The evidence before the court includes the seven kites that form the basis of Robinson's request for a writ of mandamus and Wesson's replies to Robinson's kites. The evidence shows that Wesson acknowledged receiving each kite within four to seven days and that he produced some of the requested records to Robinson on September 3, 2024, and others on September 5. For each of the six kites in which Robinson requested public records, Wesson submitted a statement signed by Robinson in which Robinson acknowledged receiving the requested records. Notably, the reference numbers for two of the kites requested by Robinson (kite Nos. 406444891 and 410373471) were not listed on the statements; instead, the reference numbers for two other kites that Robinson had not requested (kite Nos. 358569621 and 404406761) were listed.

{¶ 4} In an affidavit submitted with his evidence, Wesson attests that since Robinson's transfer to GCI in May 2024, Robinson has made over 50 public-records requests for over 300 different documents. Wesson asserts that "due to the volume of Inmate Robinson's requests it has taken approximately three (3) months to be able to transmit to him all the documents he requested."

### B. Procedural History

{¶ 5} Robinson filed this original action in June 2024. Wesson timely filed an answer. In August 2024, we granted an alternative writ, setting the schedule for the submission of evidence and briefs. 2024-Ohio-3227. Both parties submitted evidence and briefs. Robinson also submitted an amended merit brief within the time permitted by Rule 3.13(B)(1) of the Supreme Court Rules of Practice.

{¶ 6} Additionally, Robinson filed a motion to strike Wesson's presentation of evidence "for fraud upon the court and misrepresentation," a motion to proceed to judgment on statutory damages, a motion for proof of service, and a motion to proceed to judgment. Wesson filed responses in opposition to Robinson's motion to strike and his two motions to proceed to judgment. Robinson then filed a motion

to strike Wesson's response in opposition to Robinson's motions to proceed to judgment.

## II. ANALYSIS

### A. Robinson's Motions

*1. Robinson's motion to strike Wesson's evidence*

{¶ 7} In his motion to strike Wesson's presentation of evidence "for fraud upon the court and misrepresentation," Robinson accuses Wesson of submitting fraudulent evidence and lying to this court under oath. He asserts that each of the kites that Wesson submitted as evidence is "fraud upon the court and misrepresentation."

{¶ 8} Although it is not so clearly stated, Robinson's argument appears to be that Wesson's evidence is "fraud upon the court and misrepresentation" because Wesson submitted only the kites that set forth Robinson's public-records requests and not the kites that were provided to Robinson in response to those requests. However, other than using the words "fraud" and "misrepresentation," Robinson does not explain why he believes that Wesson's exhibits are not true and accurate copies of the kites they purport to be. Accordingly, Robinson's argument that those exhibits should be struck is not well taken.

{¶ 9} Robinson also submitted with his motion, "for impeachment purposes," copies of the kites that he had requested and that Wesson had provided in response to the public-records requests at issue in this action. By his motion, Robinson appears to seek leave to submit rebuttal evidence under Rule 12.06(B) of the Supreme Court Rules of Practice. "'Rebutting evidence is [evidence] given to explain, refute, or disprove new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence.'" (Bracketed text in original.) *State ex rel. Mobley v. Powers*, 2024-Ohio-104, ¶ 11, quoting *State v. McNeill*, 1998-Ohio-293, ¶ 44. Robinson's proffered exhibits do not explain, refute, or disprove new facts

introduced by Wesson; instead, Robinson's possession of the kites supports Wesson's assertion that he provided those kites to Robinson in response to Robinson's public-records requests. Therefore, the exhibits are not rebuttal evidence, and to the extent Robinson requests leave to submit rebuttal evidence, the request is denied.

{¶ 10} Nevertheless, the pages of Robinson's exhibit No. 6 attached to his motion, containing kite Nos. 406444891 and 410373471, will be considered for the limited purpose of showing that his request for a writ of mandamus ordering Wesson to produce copies of those kites has been rendered moot, as explained below. *See State ex rel. Kesterson v. Kent State Univ.*, 2018-Ohio-5110, ¶ 13, quoting *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis*, 2002-Ohio-7041, ¶ 8 (the respondent's production of requested records prior to the court's disposition in mandamus claim rendered claim moot; the "'event that causes a case to become moot may be proved by extrinsic evidence outside the record' ").

{¶ 11} Lastly, Robinson requests in his motion to strike that we judicially notice that several of Wesson's exhibits are "fraud upon the court and misrepresentation." "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(B). However, Robinson's asserted adjudicative facts are in dispute, and it is improper for a court to take judicial notice of disputed facts or legal conclusions, *see State ex rel. Harris v. Turner*, 2020-Ohio-2901, ¶ 17. Therefore, Robinson's judicial-notice request is not well taken.

{¶ 12} For the reasons stated above, we deny Robinson's motion to strike Wesson's evidence. Nevertheless, we will consider the pages of Robinson's exhibit No. 6 attached to the motion, consisting of kite Nos. 406444891 and 410373471,

for the limited purpose of showing that Robinson's request for a writ of mandamus ordering Wesson to produce copies of those kites has been rendered moot.

### 2. *Robinson's motions to proceed to judgment*

**{¶ 13}** In both his October 29, 2024 motion to proceed to judgment on statutory damages and his November 4, 2024 motion to proceed to judgment, Robinson sets forth additional arguments in support of his mandamus claim and responds to Wesson's contentions and evidence.[2] Robinson's motions are essentially reply briefs, and he attached additional evidence to both motions. Wesson urges us to deny both motions, contending that Robinson should not get another chance to present arguments and evidence in support of his mandamus claim.

**{¶ 14}** The deadline for Robinson to file a reply brief was October 9, 2024, and the deadline for the submission of evidence was September 17, 2024. *See* 2024-Ohio-3227; Rule 12.01; Civ.R. 6(A). Robinson did not move for an extension of time to file a reply brief or for leave to file rebuttal evidence. Therefore, we deny both motions to proceed to judgment and disregard the evidence submitted with those motions.

### 3. *Robinson's motion for proof of service*

**{¶ 15}** In his motion for proof of service from Wesson and the "affidavit of verity" that he filed with that motion, Robinson asserts that he received Wesson's merit brief on October 9, 2024. Robinson requests that we order Wesson to produce to this court GCI's legal-mail log to show when Robinson received the brief and to show that the reply brief that Robinson tried to file, which was rejected

---

2. In his October 29 motion, Robinson also requests that we grant him default judgment under Fed.R.Civ.P. 55. But this request is inapt since the Federal Rules of Civil Procedure do not govern his original action filed in this court. *See State ex rel. Yeager v. Lake Cty. Court of Common Pleas*, 2024-Ohio-1921, ¶ 6, fn. 1, citing Fed.R.Civ.P. 1. And because Wesson has not "failed to plead or otherwise defend" against the allegations made in Robinson's complaint, Civ.R. 55(A) of the Ohio Rules of Civil Procedure is not applicable here either.

as untimely by the clerk of this court, was not untimely. He then sets forth the arguments presented in his untimely reply brief.

{¶ 16} The certificate of service for Wesson's merit brief indicates that it was mailed to Robinson by United States mail on October 2, 2024. Rule 3.11(C)(1) of the Supreme Court Rules of Practice provides that "[s]ervice by mail is effected by depositing the copy with the United States Postal Service for mailing." Accordingly, service of Wesson's merit brief on Robinson was effected on October 2, and whether Robinson received Wesson's merit brief on October 9 is irrelevant. We therefore deny Robinson's motion for proof of service and disregard the arguments Robinson makes therein regarding the merits of his mandamus claim.

*4. Robinson's motion to strike Wesson's response in opposition to Robinson's motions to proceed to judgment*

{¶ 17} On December 2, 2024, Robinson filed a motion to strike Wesson's response in opposition to Robinson's motion to proceed to judgment on statutory damages and his motion to proceed to judgment. However, other than in the title of his motion, Robinson does not argue that Wesson's response should be struck. Instead, he asserts that he did not receive Wesson's response until 14 days after the date on the certificate of service, and he requests that we order the production of GCI's legal-mail log "as proof of fraud upon the court and misrepresentation by [Wesson]." However, we deny this request for the same reason we deny Robinson's motion for proof of service. *See* Rule 3.11(C)(1).

{¶ 18} Robinson also attempts to submit rebuttal evidence with his motion to strike and to make further arguments regarding the merits of his mandamus claim. However, he did not move for leave to file rebuttal evidence. Therefore, we disregard the evidence Robinson submitted with his motion to strike. And we disregard Robinson's belated mandamus-claim arguments for the reasons explained above regarding his motions to proceed to judgment. Accordingly, we deny

Robinson's motion to strike Wesson's response in opposition to Robinson's motions to proceed to judgment.

## B. Robinson's Mandamus Claim Is Moot

{¶ 19} "[U]pon request by any person, a public office or person responsible for public records shall make copies of [a] requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). A writ of mandamus is an appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act. *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 2006-Ohio-903, ¶ 6; *see also* R.C. 149.43(C)(1)(b). To obtain a writ of mandamus, "the requester must prove by clear and convincing evidence a clear legal right to the record and a corresponding clear legal duty on the part of the respondent to provide it." *State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-1419, ¶ 10. In general, however, "when requested records have been provided to the relator after a mandamus action is filed in a public-records case, the action becomes moot." *State ex rel. Brinkman v. Toledo City School Dist. Bd. of Edn.*, 2024-Ohio-5063, ¶ 25.

{¶ 20} At issue in this case are one kite that Robinson sent Wesson on May 27, 2024, five kites that he sent on May 31, and one kite that he sent on June 2. However, only the six kites sent in May contain public-records requests. In his June 2 kite requesting that his "unanswered requests be sent to the office that holds [the] requested records and that [he] be provided with them," Robinson does not ask Wesson to produce any additional public records. At most, the June 2 kite could be interpreted as Robinson reiterating his previous public-records requests. Therefore, even though Wesson replied to Robinson's June 2 kite, he did not have a duty under R.C. 149.43(B) to do so. *See State ex rel. Adkins v. Dept. of Rehab. & Corr. Legal Dept.*, 2024-Ohio-5154, ¶ 15 ("Generally, public offices are not required to respond to duplicative public-records requests.").

**{¶ 21}** Regarding the remaining six records requests at issue in this action, Wesson argues that Robinson's claim for a writ of mandamus is now moot because Robinson has received all the requested records for which he seeks a writ of mandamus. In an affidavit submitted with his evidence, Wesson attests that he transmitted to Robinson all the records Robinson had requested. Wesson also submitted statements signed by Robinson in which Robinson acknowledged receiving the requested records. But the statements do not list two of the requested records as having been produced: kite Nos. 406444891 and 410373471.

**{¶ 22}** In one part of his amended merit brief, Robinson acknowledges that on September 3 and 5, 2024, he was provided with copies of all the public records he requested. In another part of his amended merit brief, however, Robinson seems to assert that he has not received all the records he requested, but it is unclear which records Robinson claims to have not received.

**{¶ 23}** Overall, Wesson has established that he provided Robinson with all the records he had requested, except the two kites Robinson did not explicitly acknowledge having received—kite Nos. 406444891 and 410373471. However, as noted above, Robinson attached copies of those two kites to his motion to strike Wesson's evidence, and he stated that they were provided to him after he requested them, on September 5, 2024. Therefore, Robinson's mandamus claim is moot. *See Brinkman*, 2024-Ohio-5063, at ¶ 25. Nevertheless, Robinson's request for statutory damages is not moot. *See State ex rel. Woods v. Lawrence Cty. Sheriff's Office*, 2023-Ohio-1241, ¶ 7.

### C. Robinson Is Not Entitled to Statutory Damages

**{¶ 24}** A public-records requester is entitled to an award of statutory damages if (1) he transmitted a written public-records request by hand delivery, electronic submission, or certified mail, (2) he made the request to the public office or person responsible for the requested records, (3) he fairly described the records

sought, and (4) the public office or person responsible for public records failed to comply with an obligation under R.C. 149.43(B).  R.C. 149.43(C)(2).[3].

{¶ 25} Robinson argues that he is entitled to statutory damages in this action because Wesson, "without good cause," did not provide him with the requested records until after he filed his mandamus complaint.  It is uncontested that Robinson electronically submitted the seven kites containing his records requests to Wesson as the public-information officer for GCI.  And Wesson admits in his merit brief that he understood which records Robinson was requesting in six of those kites. Accordingly, the only question is whether Wesson failed to comply with an obligation under R.C. 149.43(B).

{¶ 26} R.C. 149.43(B)(1) provides that "upon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time."  What constitutes a reasonable period "depends upon all of the pertinent facts and circumstances," *State ex rel. Morgan v. Strickland*, 2009-Ohio-1901, ¶ 10, including the scope of the request, the volume of responsive records, and whether redactions are necessary, *see id.* at ¶ 12-17.

{¶ 27} We have held that when a relator sought a small number of records in a sufficiently clear request and the records were not subject to any recognized exemption from disclosure, a six-day delay in the production of those records by the respondent was unreasonable.  *See State ex rel. Consumer News Servs., Inc. v. Worthington City Bd. of Edn.*, 2002-Ohio-5311, ¶ 38, 41-42, 54.  However, when a large number of murder-investigation documents needed to be carefully redacted and the public office had provided initial responses, we held that the two-month

---

3. In 2024 Sub.H.B. No. 265, R.C. 149.43 was amended such that as of April 9, 2025, a person committed to the custody of the Department of Rehabilitation and Correction is no longer eligible to receive an award of statutory damages under R.C. 149.43(C).  Here, however, we apply the version of R.C. 149.43(C) that was in effect when Robinson made his public-records requests and filed his mandamus complaint.  *See* 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

delay in the production of the requested records was reasonable. *See State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, 2017-Ohio-8988, ¶ 3-6, 59.

{¶ 28} In *State ex rel. Shaughnessy v. Cleveland*, a public-records requester made frequent requests that required the city to search for and retrieve specific records and then redact protected information. 2016-Ohio-8447, ¶ 8. In assessing whether the city's response time was reasonable, in addition to considering the amount of time the city took to find and retrieve each requested record, we noted that the city was responding to multiple requests for a significant volume of records from the same person. *Id*. at ¶ 14, 18, 22. That factor contributed to the conclusion that the city's responses were timely. *Id*. at ¶ 8, 18.

{¶ 29} In this case, Robinson sent six public-records requests to Wesson in late May and early June 2024, seeking a total of 29 different documents. Although Wesson acknowledged receiving each request within four to seven days, he did not provide Robinson with responsive records until about three months later—on September 3 and 5. Wesson argues that his three-month response time was reasonable given the total volume of Robinson's public-records requests: Wesson attests that Robinson submitted over 50 public-records requests to him between May and September 2024, seeking the production of over 300 different documents. Wesson avers that the amount of time it took him to respond to the six requests at issue here was "due to the volume of Inmate Robinson's requests."

{¶ 30} Like the respondent in *Shaughnessy*, Wesson credibly attests that his production of records responsive to Robinson's public-records requests in this action was delayed by having to also respond to Robinson's many other public-records requests. Instead of considering how quickly Wesson should have responded to each individual request for a few records in isolation, we ask whether it was reasonable for Wesson to respond to Robinson's six public-records requests at issue in this case within about three months when he was faced with responding to over 50 public-records requests from Robinson seeking over 300 documents. We

conclude that it was. We therefore hold that Robinson is not entitled to an award of statutory damages.

### III. CONCLUSION

{¶ 31} For the foregoing reasons, we deny Robinson's requests for a writ of mandamus and an award of statutory damages. We also deny Robinson's motion to strike Wesson's presentation of evidence, his motion to proceed to judgment on statutory damages, his motion for proof of service, his motion to proceed to judgment, and his motion to strike Wesson's response in opposition to Robinson's motion to proceed to judgment on statutory damages and motion to proceed to judgment.

Writ denied.

_____

**KENNEDY, C.J., concurring in part and dissenting in part.**

{¶ 32} I concur in the court's judgment to the extent that it denies relator, Jackie N. Robinson, a writ of mandamus compelling respondent, James Wesson, the warden's administrative assistant and the public-information officer at Grafton Correctional Institution, to produce copies of Robinson's prior electronic kites. Wesson has produced all records responsive to Robinson's public-records requests, so the request for a writ of mandamus is moot. I also concur in the court's judgment to the extent that it denies all of Robinson's pending motions.

{¶ 33} I write separately, however, because I disagree with the court's denial of Robinson's request for statutory damages. I would award Robinson statutory damages in the amount of $6,000. Therefore, I concur in part and dissent in part.

{¶ 34} Between May 27 and June 2, 2024, Robinson sent seven public-records requests by electronic kite to Wesson. In the first six requests, Robinson asked for copies of 29 of his prior kites, while the last request served only to reiterate Robinson's previous requests. *See* majority opinion, ¶ 20. Wesson replied

to each request between June 3 and 6, informing Robinson that he would attempt to locate the requested records. On June 13, Robinson filed this writ action. Wesson finally produced copies of the requested kites on September 3 and 5—more than three months after Robinson initially submitted his public-records requests.

{¶ 35} Wesson now asserts that his three-month response time was reasonable because of the volume of public-records requests that he received from Robinson from May through September 2024. *See id.* at ¶ 29. And the majority agrees. *See id.* at ¶ 30. But the fact that a public office or person responsible for public records receives a large volume of public-records requests, standing alone, does not relieve that office or person of the duty to respond to each request within a reasonable period of time. *See* R.C. 149.43(B)(1). "'No pleading of too much expense, or too much time involved, or too much interference with normal duties, can be used by the respondent to evade the public's right to inspect and obtain a copy of the public records within a reasonable time.'" *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 2008-Ohio-6253, ¶ 36, quoting *State ex rel. Beacon Journal Publishing Co. v. Andrews*, 48 Ohio St.2d 283, 289 (1979).

{¶ 36} Here, the majority relies on *State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, 2017-Ohio-8988, and *State ex rel. Shaughnessy v. Cleveland*, 2016-Ohio-8447, to support its finding that Wesson's response time was reasonable. But neither decision suggests that a three-month response time for the production of copies of electronic kites is reasonable. In *Cincinnati Enquirer*, this court held that a two-month response time was reasonable because of the magnitude of the records requested and the need to redact them. *Cincinnati Enquirer* at ¶ 59. And similarly, in *Shaughnessy*, this court upheld as reasonable a 31-business-day response time to produce 345 pages of records because of the volume and frequency of the relator's public-record requests, which each required the city to search for responsive records, exclude irrelevant records, and review the responsive records for possible redactions. *Shaughnessy* at ¶ 21-22.

**{¶ 37}** In contrast, Robinson's public-records requests specified the *exact* kite identification number for each record requested, each kite was only one or two pages long, and no redactions were necessary. Nothing about Robinson's requests for 56 pages of prior electronic kites required a time-intensive search or method of production—Wesson knew precisely which records Robinson was asking for. And when comparing Robinson's requests to the requests at issue in the cases that the majority relies on, the records in *Cincinnati Enquirer* were produced in two months' time and the records in *Shaughnessy* were produced in 31 business days— both significantly less than the three months it took Wesson to produce Robinson's requested records.

**{¶ 38}** Therefore, the majority's determination that Wesson's response time was reasonable is not supported by the caselaw that the majority relies on. And Wesson does not provide additional caselaw to justify the delay either. This is because there is no caselaw in which this court has upheld as reasonable a three-month response time for the production of 56 pages of unredacted copies of electronic kites.

**{¶ 39}** The majority today creates a precedent that will disincentivize the timely production of public records. If a public office or person responsible for public records is permitted to idly sit on a simple public-records request—like Robinson's—for three months without repercussions, when can future requesters in Ohio expect to receive records if their requests actually require significant effort to fulfill? Should those requesters have to wait six months, a year, or even longer, given that a three-month delay for simple requests like Robinson's is now deemed reasonable?

**{¶ 40}** If the majority continues to hold that nearly every response time is reasonable, Ohio may soon have no appreciable conception of what constitutes an unreasonable period of time for the fulfillment of public-records requests—thereby

14

disincentivizing any future effort by government entities to ensure that *public* records are timely released *to the public* in accordance with R.C. 149.43.

{¶ 41} For the foregoing reasons, I would conclude that the time Wesson took to produce the copies of electronic kites that Robinson requested was unreasonable. I therefore concur in part and dissent in part and would award Robinson statutory damages. I would award Robinson $6,000 for Wesson's failure to timely produce the kites Robinson requested—the maximum $1,000 amount for each of Robinson's public-records requests since the records were produced more than ten days after this action was filed—in accordance with R.C. 149.43(C)(2).[4]

————————————

Jackie N. Robinson, pro se.

Dave Yost, Attorney General, and Salvatore P. Messina, Assistant Attorney General, for respondent.

————————————

---

4. All references in this opinion to R.C. 149.43 are to the statutory language that was in effect when Robinson made his public-records requests and when he filed this original action. Although the statute has been amended since then, the language relevant to this case remained unchanged. *See* 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).