[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Burfitt v. Sehlmeyer*, Slip Opinion No. 2020-Ohio-5147.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-5147

THE STATE EX REL. BURFITT *v.* SEHLMEYER.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Burfitt v. Sehlmeyer*, Slip Opinion No. 2020-Ohio-5147.]

*Mandamus—Public records—The requested correctional-officer shift rosters are security records exempt from public-records disclosure under R.C. 149.433(A) and (B).*

(No. 2020-0136—Submitted August 18, 2020—Decided November 5, 2020.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} Relator, Lawrence Burfitt, an inmate at the Toledo Correctional Institution ("TCI"), seeks a writ of mandamus ordering the production of shift rosters that show the duty assignments of correctional officers within the prison. Respondent, Sonrisa Sehlmeyer, the public-records custodian at TCI, withheld the

records from Burfitt on the basis that they are security records exempt from public-records disclosure.

{¶ 2} In *McDougald v. Greene*, ___ Ohio St.3d ___, 2020-Ohio-4268, ___ N.E.3d ___, we held that shift-assignment duty rosters at a different prison were security records exempt from public-records disclosure under R.C. 149.433(A) and (B). Because the records in this case reveal the same types of information as the records in *McDougald*, we likewise find that the shift rosters sought by Burfitt are security records. We therefore deny the writ.

## I. Factual and Procedural Background

{¶ 3} On August 22, 2019, Burfitt submitted to Sehlmeyer a public-records request seeking "first, second, third, and fourth shift roster[s]" from TCI. Sehlmeyer responded to Burfitt by letter dated August 26, 2019, stating that the shift rosters were not public records under the exemption for security records. *See* R.C. 149.433.

{¶ 4} Burfitt filed this action on January 27, 2020, seeking a writ of mandamus ordering Sehlmeyer to produce the requested records. Burfitt also seeks statutory damages of $1,000 and recovery of court costs. Sua sponte, we issued an alternative writ and set a schedule for the presentation of evidence and briefing on the merits in accordance with S.Ct.Prac.R. 12.05. 158 Ohio St.3d 1509, 2020-Ohio-2815, 144 N.E.3d 459. We also ordered Sehlmeyer to submit the records at issue for in camera review. 159 Ohio St.3d 1449, 2020-Ohio-3713, 149 N.E.3d 533.

{¶ 5} The withheld records responsive to Burfitt's request are six pages that comprise the correctional-officer rosters for TCI's first, second, and third shifts on August 22, 2019. (Because Sehlmeyer identified no "fourth shift" roster, we assume there is no fourth shift at TCI.) Each shift roster consists of two pages.

{¶ 6} The first-shift roster is labeled "Toledo Correctional Institution 1st Shift" in the left margin. The top of the first page shows columns labeled "Post," "1st Officer," and "Support." Listed under "Post" are assignments, which appear

2

to be delineated by specific location, task, or code. Under the "1st Officer" column and beside each location is either an officer's name or the word "secured." Officers' names also appear under the "Support" column for some, but not all, locations. Elsewhere on the page, lists of names appear under headings such as "Relief Officers," "Freeze List," "Sick Leave," "Vacation," and "Firearms." The page is color-coded to designate various officers as "not firearms certified," "phase 1" "phase 2," "lower unit responders," and/or "upper unit responders." The page also includes the total number of officers assigned to the first shift, the number of officers on and off duty, the number of officers assigned to "permanent posts" during that shift, the number of officers assigned to "additional posts," and the locations of the additional posts. The second page of the first-shift roster is titled "Overtime Control Sheet" and contains information about which correctional officers are working overtime on that shift.

{¶ 7} The second- and third-shift rosters are substantially similar in form and content to the first- shift roster.

## II. Analysis

{¶ 8} Ohio's Public Records Act, R.C. 149.43, requires a public office to promptly make copies of public records available to any person upon request. R.C. 149.43(B)(1). Mandamus is an appropriate action by which to compel compliance with R.C. 149.43. R.C. 149.43(C)(1)(b); *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6.

{¶ 9} To be entitled to the writ, Burfitt must demonstrate by clear and convincing evidence that he has a clear legal right to the requested records and that Sehlmeyer has a clear legal duty to provide them. *State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 10. We construe R.C. 149.43 liberally in favor of broad access and resolve any doubt in favor of disclosure. *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 120 Ohio

St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, ¶ 17.  Exemptions under the Public Records Act are strictly construed against the public-records custodian, who bears the burden of establishing the exemption's applicability.  *State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 23. To meet this burden, a custodian must prove that the requested records fall squarely within the exemption.  *Id.*

{¶ 10} It is undisputed that TCI is a public office within the meaning of the Public Records Act.  Burfitt is entitled to a writ of mandamus to compel disclosure of the requested records unless Sehlmeyer proves that the records are subject to a statutory exemption.

{¶ 11} Sehlmeyer withheld the shift rosters as "security records" exempt from disclosure under R.C. 149.433(A) and (B).  Sehlmeyer argues that the shift rosters fall within this exemption because they contain "information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage," R.C. 149.433(A).  Though the general purpose of a shift roster is to organize and assign correctional officers to their posts within the prison, the shift rosters at issue contain additional information, which Sehlmeyer cites to justify withholding them as security records under R.C. 149.433(A).  In an affidavit, Sehlmeyer explains:

> [TCI's] shift rosters fall under the security record exemption because the document's nature and intended purpose is [to] protect the institution from nefarious means.  A shift roster includes a color-coordinated key that effectively reveals the name, time, and location of every corrections officer on a present day at [TCI].  Consistent with R.C. 149.433, a shift roster serves its purpose in preventing attack, interference, or sabotage.  Likewise, a shift roster documents [TCI's] lines of defense by disclosing the institution's response plan

4

in the event of an emergency. The release of such information immediately jeopardizes the security of the institution and its internal measures in thwarting attacks, maintaining order, and protecting the prison, its staff, and its inmates.

{¶ 12} In *McDougald*, we found that similar information in the shift rosters of another prison qualified as "information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage" within the meaning of R.C. 149.433(A)(1). *McDougald*, ___ Ohio St.3d ___, 2020-Ohio-4268, ___N.E.3d ___, at ¶ 9.

{¶ 13} The shift rosters in this case show the identity and location of correctional officers posted throughout TCI for each shift. And as Sehlmeyer notes, the shift rosters also identify which officers are not firearms certified. This information could help to facilitate an attack on the prison generally or on specific officers, thereby jeopardizing the safety of the institution. *See id.* The information in the shift rosters could also reveal potential areas of lessened security, as well as differences in security levels between different shifts at TCI. And the information disclosing which officers are assigned to which posts could be used to target individual officers, giving the person in possession of such information the ability to track specific officers' whereabouts. This is precisely the type of information that in *McDougald* we found to fall within the definition of a security record. *Id.*

{¶ 14} Further, as Sehlmeyer notes in her affidavit, the shift rosters provide information about TCI's response plans in the event of an emergency. This testimony is corroborated by the color codes on the shift rosters, which identify certain officers as "upper level responders" and "lower level responders," in addition to the locations to which they are assigned to respond. The shift roster therefore discloses information about the prison's strategy in responding to a

disturbance or attack. This information could divulge which locations are most vulnerable to attack. *See id.*

**{¶ 15}** For the foregoing reasons, we find that the shift rosters Burfitt seeks are security records exempt from public-records disclosure under R.C. 149.433(A) and (B). In light of that holding, we have no occasion to reach Sehlmeyer's other arguments for exemption.

### III. Conclusion

**{¶ 16}** Because the shift rosters requested by Burfitt are security records exempt from disclosure under the Public Records Act, we deny the writ. Because we deny the writ, we also deny Burfitt's request for court costs and statutory damages.

Writ denied.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Lawrence Burfitt, pro se.

Dave Yost, Attorney General, and Zachary S. O'Driscoll, Assistant Attorney General, for respondent.

_____