[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Clark v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2025-Ohio-5552.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-5552

THE STATE EX REL. CLARK *v.* DEPARTMENT OF REHABILITATION AND CORRECTION.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Clark v. Dept. of Rehab. & Corr.*, Slip Opinion No. 2025-Ohio-5552.]

*Mandamus—Public-records requests—Relator failed to show that latent recordings he requested currently exist or that they existed when public-records custodian received his public-records requests, and writ and relator's request for statutory damages denied as to those public-records requests—Respondent provided copies of kites relator requested, and writ denied as moot and relator's request for statutory damages denied as to that public-records request—Writ held in abeyance as to the post orders that relator requested, and respondent ordered to file under seal for in camera inspection copies of the post orders.*

(No. 2024-1363—Submitted March 11, 2025—Decided December 16, 2025.)

IN MANDAMUS.

—————————

The per curiam opinion below was joined by FISCHER, DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ. KENNEDY, C.J., concurred in part and dissented in part, with an opinion joined by BRUNNER, J. BRUNNER, J., concurred in part and dissented in part, with an opinion.

**Per Curiam.**

{¶ 1} Relator, Thomas Clark, seeks 11 records under Ohio's Public Records Act, R.C. 149.43. He petitions this court for a writ of mandamus ordering respondent, the Ohio Department of Rehabilitation and Correction, (1) to retrieve and provide him with copies of two latent recordings from department employees' body-worn cameras, (2) to provide him with unaltered paper copies of eight kites,[1] and (3) to provide him with a paper copy of the "post orders" for prison employees working in the property room at Lebanon Correctional Institution ("the prison"), where he is incarcerated. He also seeks an award of $11,000 in statutory damages, plus court costs. The department asserts that the recordings do not exist, that it has already sent unaltered paper copies of the eight kites to Clark, and that the post orders are security records that are exempt from disclosure.

{¶ 2} Clark has failed to prove his entitlement to a writ of mandamus or to statutory damages for the recordings or kites, and because he is indigent, we waived the court costs for instituting this action, so he has incurred no court costs. We therefore deny Clark's requests for a writ of mandamus, statutory damages, and court costs for ten of the records he requested. But we order the department to file under seal for in camera inspection copies of the "post orders" that Clark requested,

---

1. "A kite is a type of written correspondence between an inmate and prison staff." *State ex rel. Griffin v. Szoke*, 2023-Ohio-3096, ¶ 3.

2

and we hold in abeyance our decision on Clark's requests for relief as to those orders.

## I. FACTS AND PROCEDURAL HISTORY

### A. Recordings from body-worn cameras

{¶ 3} Clark requested excerpts of recordings from two department employees' body-worn cameras when the cameras were powered on but were not actively recording. It is the department's policy that employees activate the primary recording mode of their body-worn cameras "as soon as safe and reasonably practicable to do so" when there is a policy-defined "qualifying event." ODRC Policy No. 10-SAF-22(VI)(C) (effective Aug. 1, 2023). And the department's policy for body-worn cameras explains that even when a department employee's body-worn camera is not actively recording, the camera still creates low-resolution video and audio recordings. ODRC Policy No. 10-SAF-22(VI)(K)(1) and (2) (effective Aug. 1, 2023). Clark calls these low-resolution recordings "latent recordings," and the policy refers to accessing these recordings as "video recall," ODRC Policy No. 10-SAF-22(VI)(K)(2). Although there are specific instances when an employee can turn off the camera entirely or place the camera in sleep mode, the cameras are in a passive recording mode for most of an employee's shift. *See* ODRC Policy No. 10-SAF-22(VI)(G), (H), and (K)(1) (effective Aug. 1, 2023). These latent recordings can be accessed and used to document an incident on those occasions when an employee failed to activate his camera before the incident occurred. ODRC Policy No. 10-SAF-22(VI)(K)(2).

{¶ 4} Although these latent recordings are constantly being overwritten, the department's policy explains that they can be accessed and preserved for up to 18 hours in certain narrow circumstances. *See* ODRC Policy No. 10-SAF-22(VI)(K)(1) and (2). The policy states that latent recordings *must* be accessed and preserved when a body-worn camera was worn but not activated by an employee who was directly engaged in a qualifying event and that they *may* be accessed and

3

preserved when a body-worn camera was worn but not activated by an employee who witnessed or responded to a qualifying event. ODRC Policy No. 10-SAF-22(VI)(K)(2). When no qualifying event occurs, the ability to access and preserve latent recordings is even narrower. "[O]nly when there is a documented and legitimate correctional supervisory or criminal justice reason," including when an incident "is reported which may require an administrative review or where recordings may have evidentiary value," can a latent recording be accessed and preserved in the absence of a qualifying event. ODRC Policy No. 10-SAF-22(VI)(K)(4) (effective Aug. 1, 2023). Nonetheless, Clark asserts that even when latent recordings are not accessed and preserved by ODRC, they are records subject to disclosure under the Public Records Act and that the prison has an affirmative obligation to retrieve, preserve, and produce such latent recordings if a person makes a public-records request for them.

{¶ 5} Clark alleges that a prison-unit manager implied possible retaliation against him for filing several legal claims against the department. This alleged event occurred in front of another department employee who Clark claims was wearing a powered-on body-worn camera. When Clark returned to his cell, he sent an electronic kite ("the initial kite") to Ellen Myers, who is the prison warden's assistant and the public-information officer at the prison, asking that the body-worn-camera latent recording be preserved and that she provide him with a copy from "8/26/24, from 7:45am to 8:10am."

{¶ 6} Myers responded to the initial kite the same day, informing Clark that his request was "overly broad" and instructing him to be specific by telling her what exactly he was looking for, where the employee with the body-worn camera was during the event, and what had happened. Clark sent a second electronic kite answering her questions later that day ("the clarifying kite"). Approximately 20 minutes after Clark sent the clarifying kite, an administrative professional at the prison reviewed it, but Myers did not view or respond to it until three days later. In

her responses to the clarifying kite, she asserted that the recording did not exist and that even if it did, Clark's conversation with the prison-unit manager was not a "qualifying event" for "video recall" under ODRC Policy No. 10-SAF-22.

{¶ 7} Clark alleges that two days after his conversation with the prison-unit manager, the supervisor of the prison's mail department told him that the prison would be charging him $20 for each piece of legal mail that Clark wanted mailed, which was twice the amount that it had been charging him. The supervisor was wearing a body-worn camera that Clark claims was powered on during this conversation. Later that day, Clark sent an electronic kite to Myers, asking that the body-worn-camera latent recording be preserved and that she provide him with a copy of the latent recording of the conversation with the supervisor.

{¶ 8} Myers responded to Clark's kite the following day, asserting that Clark's conversation with the supervisor was not a "qualifying event" for "video recall" under ODRC Policy No. 10-SAF-22. Approximately two weeks later, she sent another response, explaining that there were no responsive records to Clark's request because "[t]he only time the [latent recordings] [are] downloaded/uploaded is when a qualifying event occurs," and here, "[t]here were no qualifying events." The latent recordings had been overwritten as a matter of course.

### B. Unaltered paper copies of eight kites

{¶ 9} Clark requested from Myers paper copies of 15 of his electronic kites, including the clarifying kite. Myers delivered to Clark copies of all 15 kites. Clark also separately requested a copy of the clarifying kite from another department employee approximately two weeks earlier. Even though he requested only the kites, both Myers and the other employee provided the kites' audit logs along with the kites.[2] Comparing the audit log of the copy of the clarifying kite that he received

---

2. A kite's audit log is a ledger that keeps track of actions taken on the kite with time-stamped entries—for example: when the kite was submitted, when staff viewed the kite and when they

from the other employee with the audit log of the copy that Myers delivered to him, Clark determined that an entry was missing from the audit log in Myers's copy. Specifically, the entry missing from the copy of the audit log that Myers supplied indicates that an administrative professional at the prison viewed the clarifying kite approximately 20 minutes after Clark sent it.

{¶ 10} Clark claims that Myers altered the audit log of the clarifying kite before delivering it to him by deleting the administrative-professional entry. The department's evidence includes both a copy of the clarifying kite and audit log that Myers's attests is "true and accurate" and a copy of the clarifying kite and audit log that Myers delivered to Clark. The "true and accurate" version of the audit log includes the entry while the version Myers delivered to Clark does not.

{¶ 11} Based on the discrepancy between the two versions of the clarifying kite's audit log, Clark accuses Myers of altering the audit logs of seven other kites of the 15 he requested before she delivered them to him. Clark asserts that this evidence of Myers's having provided him an altered audit log warrants a writ of mandamus compelling the department to produce unaltered copies of the eight kites.

## C. "Post orders" for prison employees working in the prison's property room

{¶ 12} Clark requested paper copies of the "post orders" for prison employees working in the prison's property room. Myers denied this request, claiming that the orders are security records under R.C. 149.433(B). Clark responded to Myers, asking her to redact the orders and produce those parts of the orders that are not security records. Myers replied to Clark, asserting that the orders are nonpublic, confidential records, and she did not divulge them.

---

responded to it, and when the kite's status was changed from "open" to "closed" and vice versa. Examples of audit logs are available in the evidence filed in this case; both Clark's and the department's evidence include kites that have audit logs appended to them.

## D. Clark files this action

{¶ 13} Clark filed this action in September 2024, seeking a writ of mandamus ordering the department to give him copies of the two latent recordings from body-worn cameras, unaltered paper copies of eight kites, and a paper copy of the "post orders" for prison employees working in the prison's property room. He also asks for $11,000 in statutory damages plus court costs. After the department filed an answer, we granted an alternative writ. 2024-Ohio-5572.

## II. ANALYSIS

{¶ 14} The Public Records Act requires public offices and persons responsible for public records to make copies of requested public records available to requesters at cost and within a reasonable period. R.C. 149.43(B)(1).[3] When a public office or person responsible for public records fails in this duty, a writ of mandamus is available to enforce a requester's legal right to the requested records. R.C. 149.43(C)(1)(b); *State ex rel. Ware v. Gabbard*, 2025-Ohio-1022, ¶ 7.

{¶ 15} To show that the writ is appropriate, Clark must prove by clear and convincing evidence that he has a clear legal right to the requested relief and that the department has a clear legal duty to provide it. *State ex rel. Cincinnati Enquirer v. Sage*, 2015-Ohio-974, ¶ 10.

{¶ 16} Since the existence of some of the records requested (i.e., the two body-worn-camera latent recordings) is at issue, Clark must also prove that those records exist. *See State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 2008-Ohio-6253, ¶ 27. If a record has been deleted but can be recovered, it still exists as a public record. *See id.* at ¶ 28. But if the deleted record cannot be recovered, it no longer exists and cannot be obtained. *State ex rel. Pool v. Sheffield Lake*, 2023-Ohio-1204, ¶ 14, 18.

---

3. The General Assembly has recently made amendments to R.C. 149.43, most notably in 2024 Sub.H.B. No. 265 (effective Apr. 9, 2025). This opinion applies the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

{¶ 17} If a requested record did not exist at the time of the request for it, the request was correctly denied for that record. *See State ex rel. McDougald v. Greene*, 2020-Ohio-2782, ¶ 8-9. If a requested record does not exist, a writ of mandamus cannot issue because the writ will not command the impossible. *See Toledo Blade* at ¶ 27, citing *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network, Inc. v. Cincinnati Bd. of Edn.*, 2003-Ohio-2260, ¶ 15.

{¶ 18} Statutory damages may be available if the public office or person responsible for the requested public records continues to be in violation of the duties set forth in R.C. 149.43(B) after the requester files a mandamus action. R.C. 149.43(C)(2).

{¶ 19} The department bears the burden to prove that any records it withheld are exempt from disclosure under R.C. 149.43. *State ex rel. School Choice Ohio, Inc. v. Cincinnati Pub. School Dist.*, 2016-Ohio-5026, ¶ 11. "If a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt." R.C. 149.43(B)(1); *see also Cuyahoga Cty. Bd. of Health v. Lipson O'Shea Legal Group*, 2016-Ohio-556, ¶ 12 (remanding to the trial court to review records "to determine what information, if any, can be released after all protected health information is redacted"). But if a record is not a public record, then it falls outside the scope of the Public Records Act and there is thus no duty to redact. *See* R.C. 149.43(B)(1) ("Upon request by any person and subject to [R.C. 149.43(B)(8)], all *public records* responsive to the request shall be promptly prepared and made available for inspection to the requester at all reasonable times during regular business hours." [Emphasis added.]).

**A. The requested recordings from the body-worn cameras do not exist, and Clark has not shown that they ever did**

{¶ 20} Clark requested copies of two different latent recordings. He requested each recording within hours of the respective events they purportedly captured. The department's policy suggests that latent recordings might exist for that long, because up to 18 hours of latent recordings can be retrieved from each body-worn camera, ODRC Policy No. 10-SAF-22(VI)(K)(1). The department does not refute Clark's assertion that the body-worn cameras were creating latent recordings during the respective events, but Clark has not proved that they were. Clark also admits in his merit brief that even if the cameras were creating such recordings, the recordings are now "presumably lost."

{¶ 21} As an initial matter, it is not clear that Clark has met his burden of establishing that the latent recordings constitute public records. *See Sage*, 2015-Ohio-974, at ¶ 10. To be a public record, a record must be "kept" by a public office. R.C. 149.43(A)(1). But the evidence in this case establishes that the latent recordings are only "kept" by the public office when accessed and preserved within 18 hours in limited circumstances—for example, when there is a "qualifying event." ODRC Policy No. 10-SAF-22(VI)(K)(2). In arguing to the contrary, the first opinion concurring in part and dissenting in part ("the partial dissent") relies on a definition of "kept" previously cited by this court. *See* first opinion concurring in part and dissenting in part, ¶ 54, quoting *Cincinnati Bd. of Edn.*, 2003-Ohio-2260, at ¶ 11, quoting *Webster's Third New International Dictionary* (1986) ("'"[k]ept" is the past participle of "keep," which . . . means "preserve," "maintain," "hold," "detain," or "retain or continue to have in one's possession or power esp. by conscious or purposive policy"'" [ellipsis added in first opinion concurring in part and dissenting in part]). But that definition cuts against the partial dissent's reading of R.C. 149.43(A)(1). The first five words given as possible meanings of "keep" are "preserve," "maintain," "hold," "detain," and "retain." While "detain"

is clearly inapplicable here, the other four words all suggest some conscious act by the person or entity doing the keeping and something more than a mere temporary existence. This understanding is reinforced by the definition's final phrase: "or continue to have in one's possession or power esp. by conscious or purposive policy." Latent recordings that exist for a limited time in the memory of an electronic device but that are not otherwise maintained or preserved by a public office would hardly seem to qualify as something that "continue[d]" to be in a public office's "possession . . . by conscious or purposive policy."

{¶ 22} Indeed, the partial dissent's reading would seem to sweep in things like temporary scribbles on a white board, unsaved edits to documents, and other items that might exist for a brief period in the temporary memory of an electronic device but that are not maintained or otherwise kept by a public office. Under the partial dissent's reading, upon request, the public office would have a new duty to create a public record preserving that item and then produce the newly created public record. We are skeptical that the Public Records Act can be read to extend so far beyond its plain terms.

{¶ 23} But we need not resolve whether the requested latent recordings constitute public records, because even if we were to assume that a latent recording that was never accessed and preserved by a public office could qualify as a public record, Clark has not shown that the two recordings he seeks exist. A record's existence is a prerequisite to its production, so a writ of mandamus cannot issue to command production of records that do not exist. *Toledo Blade*, 2008-Ohio-6253, at ¶ 27. Therefore, in this case, Clark must establish that the recordings currently exist. *See* R.C. 149.43(C)(1)(b) (a requester may "[c]ommence a mandamus action to obtain a judgment that orders the public office or person responsible for the public record to comply with" R.C. 149.43(B)). Myers attests that the recordings do not exist, and Clark has given us no reason to doubt Myers's sworn testimony. *See Pool*, 2023-Ohio-1204, at ¶ 18 ("A public office has no duty to create or provide

10

access to nonexistent records."). We therefore deny mandamus relief for these two recordings.

{¶ 24} We also deny Clark's request for statutory damages. As we have explained, even if we were to assume that latent recordings that were never accessed or preserved by the department constitute public records, Clark has not established that the latent recordings actually existed when Myers received the requests. Myers denied the request for the first recording because she thought the request was "overly broad," and she denied the request for the second recording because she claimed that Clark's conversation with the mail-department supervisor was not a "qualifying event" for "video recall" under ODRC Policy No. 10-SAF-22. Myers never specifically admitted that the recordings existed when she denied each request, and Clark has provided no evidence to prove that they did. Because he has not met his burden, we deny Clark an award of statutory damages regarding his requests for the two latent recordings.

**B. Clark has not met his burden to demonstrate that he is entitled to a writ of mandamus or an award of statutory damages for any of the kites**

{¶ 25} Clark requests a writ of mandamus compelling the department to produce unaltered paper copies of eight kites. He admits that Myers delivered the eight kites to him in person, and he submitted them with his evidence. He asserts, though, that Myers altered the audit logs of all eight kites by eliminating certain entries or adding supplementary responses. To prove this, he submitted a version of the clarifying kite's audit log that contains an entry indicating when an administrative professional at the prison viewed the kite. This entry was missing from the audit log of the clarifying kite that Myers delivered to him. He asserts that this evidence is sufficient to show that Myers altered all eight kites.

{¶ 26} As evidence, the department submitted what Myers's attests is a true and accurate copy of the clarifying kite, including its audit log. This version's audit log contains the administrative-professional entry that Clark claims was missing

from the version that Myers delivered to him. There is no reason to believe that the "true and accurate version" of the clarifying kite or its audit log is incomplete. *See State ex rel. Frank v. Clermont Cty. Prosecutor*, 2021-Ohio-623, ¶ 15 ("A public office may establish by affidavit that all existing public records have been provided. . . . The attestations in an affidavit may be rebutted by clear and convincing evidence showing a genuine issue of fact that additional responsive records exist."). Clark has therefore definitively received a true and accurate copy of the clarifying kite. Since mandamus will not command production of records that the department has already produced to Clark, Clark has failed to state a viable claim for the writ regarding the eight kites. *See State ex rel. Ware v. Vigluicci*, 2024-Ohio-3131, ¶ 10 ("providing the requested records to the relator moots a public-records mandamus claim"). We therefore deny as moot Clark's request for mandamus relief compelling the department to produce unaltered paper copies of eight kites.

{¶ 27} We also reject Clark's claim for statutory damages. To be entitled to statutory damages, Clark must prove by clear and convincing evidence that the department failed to comply with an obligation under R.C. 149.43(B). *See* R.C. 149.43(C)(2); *State ex rel. Grim v. New Holland*, 2024-Ohio-4822, ¶ 6. Clark's claim for statutory damages is premised on his claim that the audit log of the version of the clarifying kite that Myers delivered to him was missing an entry. The problem, though, is that Clark has not shown that the missing entry was responsive to his request. *See* R.C. 149.43(B)(1). Clark requested a paper copy of his own kite. Myers provided him with a copy of that kite, his "requested public record," *id.* Clark did not request the audit log, and he has not shown that information in the audit log regarding when prison employees viewed or printed the kite was part of the public record he requested. He has therefore not shown that the omission of this information from the version of the audit log that Myers

delivered to him constituted a failure to comply with his request. Therefore, we deny his request for an award of statutory damages.

**C. The department must prove that the security-records exemption applies to the "post orders"**

{¶ 28} Clark requested paper copies of the "post orders" for prison employees working in the prison's property room. The department insists that the orders are security records exempt from disclosure under R.C. 149.433(B). Clark contends that while some sections of the orders might be security records, those sections can be redacted. The department responds that even if the orders are redacted, the remaining information could "provide insight into institutional operations."

{¶ 29} R.C. 149.433(A)(1) defines a "security record" as "[a]ny record that contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage." R.C. 149.433(B)(1) provides that subject to an exception not applicable here, a security record is not a public record under R.C. 149.43. To show that a record qualifies for the security-records exception, the department must submit "evidence providing specific factual support that goes beyond mere conclusory statements in an affidavit." *State ex rel. Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 50.

{¶ 30} Post orders are documents that ordinarily contain information such as duties, policies, schedules, and procedures specific to particular post assignments for prison employees. *See, e.g.*, *State ex rel. Stuart v. Greene*, 2020-Ohio-3685, ¶ 2; *State ex rel. McDougald v. Greene*, 2019-Ohio-3798, ¶ 1 (Kennedy, J., dissenting). This court has held that documents containing this kind of information are within the scope of the security-records exception. *See, e.g.*, *McDougald v. Greene*, 2020-Ohio-4268, ¶ 9; *State ex rel. Burfitt v. Sehlmeyer*, 2020-Ohio-5147, ¶ 13. In those cases, the party claiming that the security-records exception applied either explained what was in the documents or submitted a version of the documents

that allowed us to determine what information was in them. *McDougald*, 2020-Ohio-4268, at ¶ 3, 9-10; *Burfitt* at ¶ 11-14. But here, the only evidence that the department submitted to show that the requested post orders are security records was Myers's affidavit stating that they contain "sensitive operational details." The department has neither submitted the post orders under seal nor described what kind of information is in them beyond Myers's conclusory statement.

{¶ 31} The department's evidence and merit brief lack explanation or specific details about what makes the requested "post orders" security records exempt from disclosure under R.C. 149.433. Therefore, this court does not have enough information to decide whether to grant or deny the writ or whether to award statutory damages. We therefore order the department to file under seal for in camera inspection copies of the requested orders so that we may determine whether the orders are security records. If they are, they are categorically not public records and the department has no duty to produce them in full or redacted form. *See* R.C. 149.433(B)(1).

### III. CONCLUSION

{¶ 32} We deny Clark all requests for relief for ten of the records he requested, we order the department to file under seal within 14 days for in camera inspection copies of the "post orders" that Clark requested, and we hold in abeyance our decision on Clark's requests for relief as to the "post orders."

Writ denied in part
and held in abeyance in part.

_____

**KENNEDY, C.J., joined by BRUNNER, J., concurring in part and dissenting in part.**

{¶ 33} Respondent, the Ohio Department of Rehabilitation and Correction ("ODRC"), has a policy stating that body-worn-camera footage that is captured or recorded by ODRC employees during the performance of their job duties is subject

to Ohio's public-records law. *See* ODRC Policy No. 10-SAF-22(VI)(B)(2) (effective Aug. 1, 2023). And in accordance with that policy, passively recorded footage ("latent recordings") are kept for at least 18 hours. *See* ODRC Policy No. 10-SAF-22(VI)(K)(1) (effective Aug. 1, 2023).

**{¶ 34}** For 18 hours, ODRC had in its possession latent recordings from two different prison employees' body-worn cameras. That footage would have proved or disproved relator Thomas Clark's claims that (1) a prison employee threatened retaliation against him for exercising his constitutional right to access the courts for legal redress and (2) a second prison employee wrongly increased the price for Clark to send legal mail.

**{¶ 35}** Clark asked the public-information officer at Lebanon Correctional Institution, Ellen Myers, to preserve the latent recordings before they were overwritten. Preserving those recordings could have been accomplished by merely instructing the two prison employees or a supervisor to turn off the body-worn cameras. *See* ODRC Policy No. 10-SAF-22(VI)(K)(3) (effective Aug. 1, 2023). But Myers chose not to preserve them.

**{¶ 36}** In my view, actions like Myers's permitting latent recordings to be overwritten and destroyed when the recordings are evidence that would either prove or disprove a citizen's allegations of misconduct by government officials leads to greater public distrust of the government. One must consider what the government has to hide in circumstances like this.

**{¶ 37}** Like the Texas two-step adds a step to the foxtrot, the majority now adds a new step for public-records requesters. According to the majority, a record is not a public record unless the government intends to keep it for some undisclosed period. The only problem with that reasoning is that there is no temporal component in the unambiguous language of the Public Records Act that establishes how long a record must be kept before it is subject to release as a public record. This new step added by the majority will only make it harder for Ohioans to gain

access to the records that rightly belong to the citizens of this State, *see State ex rel. Patterson v. Ayers*, 171 Ohio St. 369, 371 (1960), and will increase the public's distrust of courts.

{¶ 38} This mandamus action concerns a total of four public-records requests submitted by Clark to Myers on the following days: July 23, August 26, August 28, and September 11, 2024. The July 23 request sought paper copies of the prison's record-retention schedule and "post orders" for prison employees working in the prison's property room. The August 26 and 28 requests sought digital copies of the latent recordings from the body-worn cameras of two prison employees. And the September 11 request sought paper copies of 15 of Clark's prior electronic kites and six of his informal complaints.

{¶ 39} For the reasons that follow, I concur in the court's judgment to the extent that it denies Clark a writ of mandamus compelling ODRC to produce copies of records responsive to Clark's August 26, August 28, and September 11 public-records requests. ODRC has provided all the records responsive to the September 11 request. *See* majority opinion, ¶ 26. And as explained below, the latent recordings responsive to the August 26 and 28 requests no longer exist.

{¶ 40} Additionally, for the July 23 public-records request, I concur in the court's judgment ordering ODRC to file under seal for in camera inspection copies of the "post orders." *See id.* at ¶ 32. I also agree with holding in abeyance the court's decision on Clark's requested relief related to the "post orders." *Id.*

{¶ 41} I write separately, however, because I disagree with the court's judgment denying Clark an award of statutory damages related to the August 26, August 28, and September 11 public-records requests. *Id.* at ¶ 24, 27, 32.

{¶ 42} Accordingly, I concur in part and dissent in part.

### The Public Records Act—Scope of Mandamus

{¶ 43} As an initial matter, it is worth discussing the events surrounding the August 26 and 28 public-records requests for the latent recordings. (The majority

and Clark refer to these recordings as "latent recordings," while ODRC's policy refers to accessing these recordings as "video recall," ODRC Policy No. 10-SAF-22(VI)(K)(2) [effective Aug. 1, 2023].)

{¶ 44} Latent recordings are low-resolution video and audio recordings that are passively recorded on ODRC employees' body-worn cameras while the cameras are in the powered-on position but are otherwise not actively recording. ODRC Policy No. 10-SAF-22(VI)(K)(1) and (2). When a body-worn camera is actively recording, it is because an employee has activated the camera—or, in some cases, it has automatically activated—to record a "qualifying event," such as the employee's responding to an emergency call for assistance. ODRC Policy No. 10-SAF-22(VI)(C) (effective Aug. 1, 2023) (a "qualifying event" requires the employee to manually activate the body-worn camera). By default, however, the body-worn cameras are passively recording during an employee's shift, unless an employee turns a camera off entirely or places the camera in sleep mode for enumerated situations outlined in ODRC's policy (e.g., using the restroom). ODRC Policy No. 10-SAF-22(VI)(E), (G), (H), and (K) (effective Aug. 1, 2023).

{¶ 45} The limitation of this passive recording system is that new footage overwrites old footage because of each body-worn camera's limited internal storage capacity of 18 hours for latent-recording footage. *See* ODRC Policy No. 10-SAF-22(VI)(K)(1). Therefore, to preserve the recording of a specific event that was captured as a latent recording on a camera, the latent recording must be retrieved within an 18-hour window that begins when the event occurs and ends after the body-worn camera has been on and passively recording for 18 hours after the event. But if the camera is powered off before the recording is overwritten, the recording may be retrieved at any time, presumably for as long as the camera remains powered off. *See* ODRC Policy No. 10-SAF-22(VI)(K)(3).

{¶ 46} Having defined the limitations for retrieving latent recordings, I now turn to the events surrounding Clark's August 26 and 28 public-records requests.

{¶ 47} Clark claims that on the morning of August 26, 2024, a prison-unit manager intimidated him for filing legal claims against ODRC. A second prison employee wearing a body-worn camera, identified by Clark as Lieutenant Morris, witnessed this interaction. Thereafter, Clark returned to his cell and sent a public-records request at 9:10 a.m.—the August 26 request—to Myers, seeking the body-worn camera footage from Morris's camera. Specifically, Clark requested that he be provided with "a digital copy and paper transcript of the body-warn-camera audio and video from Lieutenant Morris' body camera from this morning, 8/26/24, from 7:45am to 8:10am." Myers responded about three hours later, informing Clark that his request was "overly broad" and that the prison's legal services had advised against producing the requested records. Myers's also asked Clark: "What exactly are you looking for? Where was Sgt. Morris? What happened?" Clark responded about an hour later, at 1:17 p.m., with a second electronic kite, answering Myers's questions from the initial electronic kite. Myers did not respond again until three days later, on August 29. On that date, Myers sent two responses, with the first asserting that the latent recording did not exist and the second asserting that even if the latent recording did exist, the request would be denied because Clark's conversation with the prison-unit manager did not meet the definition of a "qualifying event" under ODRC Policy No. 10-SAF-22.

{¶ 48} Similarly, on August 28, 2024, Clark claims that another prison employee, Lieutenant Holley, verbally threatened to charge him double for sending legal mail. Holley was wearing a body-worn camera at the time of the conversation. After the conversation, Clark sent a public-records request—the August 28 request—to Myers, seeking the body-worn camera footage from Holley's camera. Myers responded the next day, denying Clark's request because his interaction with Holley did not meet the definition of a "qualifying event" under ODRC Policy No. 10-SAF-22. On September 13, Myers followed up to inform Clark that there were no responsive records to his request.

{¶ 49} Reviewing ODRC's policy and the electronic-kite audit logs for the August 26 and 28 public-records requests indicates that the latent recordings responsive to Clark's requests were not preserved within the 18-hour window necessary to retrieve latent recordings from body-worn cameras. The combination of initially denying the requests and then failing to act diligently in responding to Clark's communications thereafter all but ensured that the latent recordings were overwritten on Morris's and Holley's body-worn cameras by the time Myers sent her final responses to, and closed, Clark's August 26 and 28 requests.

{¶ 50} Hence, the latent recordings responsive to these two public-records requests no longer exist. And Clark concedes as much in his merit brief.

{¶ 51} The majority goes further, however. It contends that Myers never admitted that the latent recordings existed in the first place and that Clark has failed to prove that the records "actually existed" at the time of his public-records requests. Majority opinion at ¶ 24. This dubious position is directly contradicted by ODRC's policy, Myers's responses that are set forth in the electronic-kite audit logs, and her affidavit that was submitted as evidence in this case.

{¶ 52} The policy suggests that the requested latent recordings existed at the time of Clark's public-records requests since Clark made his requests within the 18-hour window that the recordings could be retrieved and such recordings are, as a matter of course, "available to use whenever a qualifying event occurred and the employee was unable to, or forgot to, activate their [body-worn camera]," ODRC Policy No. 10-SAF-22(VI)(K)(2). Further, Myers's response to the August 28 request states that Clark requested that Holley "download/upload his body camera file from today (August 28, 2024) to the appropriate LeCI/DRC database in order to preserve the record" but that the request would be denied because Clark's conversation with Holley did not "meet the definition of a 'qualifying event.'" Myers's affidavit also states that for the August 26 request, "no [body-worn camera] footage existed for the described incident *because* the event did not meet

the definition of a 'qualifying event' under ODRC Policy No. 10-SAF-22." (Emphasis added.)

**{¶ 53}** Reading the policy and Myers's responses and affidavit together, one thing is certain—the events Clark sought to preserve were passively recorded as latent recordings on the respective body-worn cameras, but Myers refused to produce the latent recordings at the time of Clark's public-records requests because there was no "qualifying event" to justify retrieval and release of the latent recordings. Therefore, contrary to the majority, I would conclude that the requested latent recordings did exist at the time of Clark's August 26 and 28 public-records requests.

**{¶ 54}** The majority suggests that the latent recordings were never public records because they were never accessed and preserved by ODRC, i.e., they were never downloaded. *See* majority opinion at ¶ 21. However, classifying a record as a public record does not depend on what type of device the record is found. Rather, "public record" means "records kept by any public office," R.C. 149.43(A)(1), and "records" include "any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office," R.C. 149.011(G). And for purposes of the Public Records Act, "'[k]ept' is the past participle of 'keep,' which . . . means 'preserve,' 'maintain,' 'hold,' 'detain,' or 'retain or continue to have in one's possession or power esp. by conscious or purposive policy.' " *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network, Inc. v. Cincinnati Bd. of Edn.*, 2003-Ohio-2260, ¶ 11, quoting *Webster's Third New International Dictionary* (1986).

**{¶ 55}** A latent recording on one of ODRC's body-worn cameras squarely fits within these definitions. A latent recording is an electronic record stored on a

device belonging to ODRC that documents ODRC's activities—i.e., the actions of correctional officers and incarcerated people. The recordings continue to be in ODRC's possession for at least 18 hours. Latent recordings are therefore public records kept by ODRC until they are overwritten.

{¶ 56} ODRC's body-worn-camera policy even contemplates that latent recordings are public records. ODRC Policy No. 10-SAF-22(VI)(B)(2) states, "Recordings or photographs made on ODRC issued [body-worn-camera] equipment or otherwise captured or recorded by ODRC employees during the performance of their job duties are the property of ODRC and subject to Ohio's Public Records Law." The policy also provides that "all recordings identified as responsive to a public records request shall be maintained in accordance with ODRC's Record Retention Schedule and applicable departmental policy." ODRC Policy No. 10-SAF-22(VI)(P)(2)(b) (effective Aug. 1, 2023). Myers did not adhere to the body-worn-camera policy.

{¶ 57} The majority says that the synonyms of the word "keep" noted above "suggest some conscious act by the person or entity doing the keeping and something more than a mere temporary existence." Majority opinion at ¶ 21. But there is a conscious act by ODRC in having body-worn cameras passively record and retain the latent recordings—ODRC knows that it may need those latent recordings, and it believes that 18 hours is a sufficient period to know which ones to keep. And what duration under a public-records-retention policy is long enough before retention is no longer "temporary" and records become subject to a public-records request—three days? A week? A month? The majority is just making up the rules as it goes along.

{¶ 58} The main disagreement I have with the majority comes down to a question of timing. The majority looks back from today to decide whether the latent recordings were public records. It cannot dispute that if ODRC had prevented the recordings from being overwritten, they would be public records. But because we

now know that the recordings were not in fact preserved, to the majority, they were never public records in the first place.

{¶ 59} To me, the relevant time for deciding whether a record is a public record is the time of the request. After all, that is when the duty to produce the record attaches—R.C. 149.43(B)(1) states that public records shall be made available "*upon request.*" (Emphasis added.) So when Clark requested each latent recording, that was when ODRC was obligated to preserve and produce each one. And at the moment that Clark made each request, ODRC still had each recording.

{¶ 60} While the majority seeks to trivialize this case by likening the latent recordings to scribbles on a white board, *see* majority opinion at ¶ 22, the logical consequences of the majority's decision are far reaching. Under the majority's logic, the most consequential government records would never be public records so long as the records-retention policy is short enough to be deemed temporary. Or a record in a recycle bin is not a public record, because the custodian does not intend to keep it. And while correspondence in an email could be a public record, *State ex rel. Glasgow v. Jones*, 2008-Ohio-4788, ¶ 20, if that same correspondence were sent through an app like Snapchat that automatically deletes messages, it could never have been a public record. The majority has just given the government the playbook for circumventing the Public Records Act.

{¶ 61} There is no exception in the Public Records Act for records received by the public office and kept temporarily on an electronic device but never accessed or downloaded. Nor is there any provision directing courts to look at whether a public-records custodian *intends* or *decides* to keep a record. Instead, under the act, the question is whether the public office keeps the record and whether that record documents the activities of the public office. *See* R.C. 149.43(A)(1) and 149.011(G).

{¶ 62} It also does not matter where the public office keeps its public records. A public record does not lose its status as a public record just because it

is stored temporarily on an electronic device such as a body-worn camera. It does not lose its status as a public record even if it is stored on a private email server or a personal device, such as a smart phone. (Our decision in *State ex rel. Platt v. Montgomery Cty. Bd. of Elections*, 2025-Ohio-2079, ¶ 32-35, in which we held that an email that was sent from the personal email account of the deputy director of a county board of elections to the chairman of a county political party was not a public record, is wrong on this point.)

{¶ 63} In my view, if a public record is kept temporarily or permanently on an electronic device, it is a public record for as long as it is kept by the public office—regardless of whether it is ever accessed or downloaded by the public office. And here, the latent recordings were being kept by ODRC at the time of Clark's public-records requests, even if no one accessed or downloaded them before they were subsequently deleted. That the latent recordings were maintained for some time is enough to make them public records, and they could not be destroyed once they had been requested.

{¶ 64} Nonetheless, a relevant question in determining whether to issue a writ of mandamus is whether the requested records *currently* exist. "There is no duty under R.C. 149.43 to create [or provide] records that no longer exist." *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 2008-Ohio-6253, ¶ 27, citing *State ex rel. Lanham v. Smith*, 2007-Ohio-609, ¶ 15. And here, there are now no records responsive to Clark's August 26 and 28 public-records requests that can be compelled for production through a writ of mandamus, because Myers did not preserve the latent recordings before they were overwritten. Although the destruction of these records invites the obvious question "why were they destroyed?"—for purposes of this case, the majority is correct to deny the writ for these requests because the records no longer exist. *See* majority opinion at ¶ 23.

{¶ 65} However, even if a court denies a public-records requester's mandamus claim, the requester may be entitled to statutory damages. *State ex rel. Slager v. Trelka*, 2024-Ohio-5125, ¶ 34.

## Statutory Damages

{¶ 66} To be entitled to an award of statutory damages, a public-records requester need only show that the public office or person responsible for the requested public records failed to comply with an obligation under R.C. 149.43(B) after the requester transmitted a written and fairly described request by hand delivery, electronic submission, or certified mail. R.C. 149.43(C)(2);[4] *see also Slager* at ¶ 34.

### *August 26 and 28 Requests*

{¶ 67} As discussed above, Clark's August 26 and 28 public-records requests sought latent recordings from the body-worn cameras of two prison employees—Morris and Holley. Myers initially denied the August 26 request because it was "overly broad" and the prison's legal service had advised against producing it. She later clarified that the requested record was not available, because Clark's conversation with the prison-unit manager was not a "qualifying event." Similarly, for the August 28 request, Myers denied the request because Clark's conversation with Holley was not a "qualifying event." Myers followed up to both requests several days after the respective denials, stating in both instances that the requested latent recordings did not exist.

{¶ 68} As an initial matter, ODRC contends in its merit brief that latent recordings of nonqualifying events are not public records subject to production under R.C. 149.43. ODRC is wrong. Latent recordings are created by body-worn cameras that ODRC uses to keep track of its employees' activities. *See* ODRC

---

4. The General Assembly amended R.C. 149.43 in 2024 Sub.H.B. No. 265 with an effective date of April 9, 2025. This opinion applies the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

Policy No. 10-SAF-22(II) and (V) (effective Aug. 1, 2023). These electronic recordings, then, necessarily document the operations of ODRC. *See* R.C. 149.011(G) (a "record" includes an "electronic record . . . created . . . by . . . [a] public office of the state or its political subdivision[], which serves to document the . . . operations . . . or other activities of the office"). Therefore, the latent recordings are records of a public office, and such records are subject to disclosure under the Public Records Act absent a valid ground for exemption from disclosure, *see* R.C. 149.43(A)(1).

{¶ 69} Based on this understanding of the latent recordings, Myers's responses to Clark's August 26 and 28 public-records requests constitute an improper denial of the requests.

{¶ 70} First, for the August 26 request, Myers's assertion that the request was "overly broad" is unfounded. R.C. 149.43(B)(2) authorizes the rejection of a public-records request as ambiguous "only when the office cannot 'reasonably' identify the records sought," *State ex rel. McDougald v. Greene*, 2020-Ohio-5100, ¶ 15, quoting R.C. 149.43(B)(2). Here, Clark's request stated what record he sought, where the record was located (Morris's body-worn camera), and what date and time the recording was made. Importantly, he requested the latent recording from a narrow and specific period spanning only 25 minutes. Nothing about Clark's request would have led a reasonable person to conclude that he or she could not identify the record requested. Hence, Myers's denial of the August 26 public-records request as "overly broad" was improper.

{¶ 71} Second, regarding the August 26 request, Myers asked Clark, "What exactly are you looking for? Where was Sgt. Morris? What happened?" This sounds like Myers's asking Clark why he needed the latent recording. However, R.C. 149.43(B)(4) prohibits a public-records custodian from limiting access to public records based on the intended use of the record. Myers therefore had another improper basis for failing to produce the requested August 26 latent recording.

{¶ 72} Third, for both the August 26 and 28 requests, Myers's claimed exemption—that neither of Clark's interactions with prison staff constituted a "qualifying event" to warrant preserving and releasing the latent recordings of the interactions—was not a permissible basis for denying the requests. There is no lack-of-a-qualifying-event exemption in the Public Records Act, and R.C. 149.43 does not condition the availability of body-worn-camera recordings on the existence of a "qualifying event" that triggers active recording. Therefore, Myers's reasoning is not supported by a valid exemption from disclosure of the requested records. *See* R.C. 149.43(A)(1); *see also State ex rel. School Choice Ohio, Inc. v. Cincinnati Pub. School Dist.*, 2016-Ohio-5026, ¶ 11 (the respondent in a public-records mandamus action has the burden of proving that the records are exempt from disclosure under R.C. 149.43); *State ex rel. Adkins v. Cole*, 2025-Ohio-1026, ¶ 39 (denial of a public-records request was improper when the respondents did not argue that footage responsive to the request was exempt from disclosure under a valid statutory exemption). Myers's denial of each request for a lack of a "qualifying event" was improper.

{¶ 73} We have recently awarded statutory damages when a record existed at the time of the request but the respondent's improper denial led to the deletion of the record before the mandamus complaint was filed. *See Adkins* at ¶ 38-39.

{¶ 74} I would therefore award Clark $2,000 in statutory damages for the August 26 and 28 public-records requests. *See* R.C. 149.43(C)(2).

### *September 11 Request*

{¶ 75} On September 11, 2024, Clark submitted an electronic kite wherein he requested paper copies of 15 of his prior electronic kites and six of his informal complaints. He admits that he has received all records responsive to this public-records request. Clark claims, however, that eight of the electronic-kite copies he received were altered to eliminate entries from the kites' audit logs. As proof, Clark provides another version of the electronic kite he sent at 1:17 p.m. on August 26—

which he received in a prior, unrelated public-records request—that contains an entry in the audit log of the kite that is missing from the electronic-kite copy Myers provided in response to the September 11 request.

{¶ 76} As for the remaining seven kites at issue, Clark has not shown by clear and convincing evidence that those kites were altered as well, and Myers avers in her affidavit that all records responsive to the September 11 request have been provided to Clark, *see State ex rel. Frank v. Clermont Cty. Prosecutor*, 2021-Ohio-623, ¶ 15 (attestations in an affidavit may be rebutted by clear and convincing evidence showing a genuine issue of fact that additional responsive records exist). Therefore, only the electronic kite Clark sent at 1:17 p.m. on August 26 is relevant for this determination of statutory damages.

{¶ 77} Clark has received a copy of that requested electronic kite with the missing entry from the audit log—ODRC provided a complete copy of the kite and audit log as evidence. Even so, the complete version of that kite and audit log was not provided to Clark until after he filed this mandamus action. This raises the question—if an incomplete record is provided in response to a public-records request, has the public office or person responsible for public records failed to comply with the requirements of R.C. 149.43(B)? The answer is yes.

{¶ 78} The public office or person responsible for public records has a duty to produce a copy of the public record responsive to a request, not an incomplete version of that record. *See* R.C. 149.43(B)(1) ("the public office or the person responsible for the public record shall make available *all of the information* within the public record that is not exempt" [emphasis added]); *see also State ex rel. The Warren Newspapers, Inc. v. Hutson*, 1994-Ohio-5, ¶ 20 ("if respondents wish to comply with the request, they must make [a] copy of the original file"). Only if an exemption applies or redactions are required should anything other than a copy of the original record be provided. *See* R.C. 149.43(B)(1).

{¶ 79} Therefore, although Clark now has the complete electronic kite and audit log that is responsive to his public-records request, he is entitled to an award of statutory damages for Myers's failure to produce the complete record in accordance with R.C. 149.43(B)(1) before Clark filed this mandamus action on September 30, 2024.

{¶ 80} R.C. 149.43(B)(1) requires that copies of the requested public records be made available "within a reasonable period of time." ODRC's response time of three months here—with the request sent on September 11 and the complete electronic kite and audit log produced as evidence on December 17—is not reasonable for the production of a copy of a single, correct version of a requested kite. *See generally State ex rel. Robinson v. Wesson*, 2025-Ohio-1874, ¶ 38 (Kennedy, C.J., concurring in part and dissenting in part) (a three-month response time was unreasonable for the production of *56 pages* of unredacted copies of electronic kites).

{¶ 81} I would therefore award Clark $1,000 in statutory damages for the September 11 public-records request. *See* R.C. 149.43(C)(2).

### Conclusion

{¶ 82} For the foregoing reasons, I would conclude that Clark is entitled to an award of statutory damages for his August 26, August 28, and September 11 public-records requests. The August 26 and 28 requests were improperly denied, and the records responsive to those requests no longer exist. And the September 11 request was not fulfilled until more than ten days after Clark filed this mandamus action. Therefore, I would award Clark $3,000 in statutory damages.

{¶ 83} Because the court does not do so, I concur in part and dissent in part.

———————————

**BRUNNER, J., concurring in part and dissenting in part.**

{¶ 84} I agree with the first opinion concurring in part and dissenting in part and join that opinion in full. I write separately to point out that this is the second

time in recent months that this court has adopted a novel and unjustified interpretation of R.C. 149.43(A)(1)'s requirement that a "public record" be a record that is "kept by" a public office. *See State ex rel. Platt v. Montgomery Cty. Bd. of Elections*, 2025-Ohio-2079, ¶ 32-35 (holding that emails from a public official's private email account are not "kept by" a public office, even if the account contains emails reflecting official business of the public office, such as a confidential memorandum from the public office), *reconsideration denied*, 2025-Ohio-2888.

{¶ 85} The first opinion concurring in part and dissenting in part explains why this court's new focus on the "kept by" requirement is off the mark. To that explanation I add that the court's position in *Platt* creates an obvious and gaping loophole in the Public Records Act and that the majority's analysis here pushes a proverbial 10-ton truck through even that loophole. This quest to develop new case law based on the "kept by" language in R.C. 149.43(A)(1) is rushed and unnatural. The result of this analytical flurry is that it will be vastly more difficult for the public to access and obtain what belongs to them—public records—with no legal or even practical justification for it.

_____

Thomas Clark, pro se.

Dave Yost, Attorney General, and Adam Beckler and Matthew P. Convery, Assistant Attorneys General, for respondent.

_____